CASE 48—PETITION EQUITY—OCTOBER 29.

## Little, &c., v. Ragan Brothers, &c.

APPEAL FROM GRAVES CIRCUIT COURT.

1. FRAUDULENT CONVEYANCES—ATTACHMENT.—A court of equity, by the levy of an attachment on property fraudulently conveyed, acquires jurisdiction to subject the property, as that of the grantor, to the plaintiff's debt, without a return of "no property," where

Little, &c., v. Ragan Brothers, &c.

the attachment is duly issued upon the ground that the defendant has disposed of his property with the fraudulent intent to cheat, hinder, or delay his creditors.

2. NON-RESIDENTS.—While the plaintiff may, at or after the commencement of an action, have an attachment against the property of the defendant upon the ground that he is a non-resident of the State, this fact is not alone sufficient to authorize a judgment. setting aside a conveyance of his estate as fraudulent.

3. EVIDENCE OF FRAUD.—Where the parties to a conveyance, which appears on its face to be simply a conveyance without considera- tion, attempt to give a reason for its execution, which is contradicted by the facts, this fact may authorize the conclusion that the conveyance was actually fraudulent, although without the attempted explanation the conveyance might have been regarded as merely: voluntary.

J. T. WEBB, D. G. PARK FOR APPELLANTS.

1. At common law could a court of chancery entertain jurisdiction in a suit attacking a conveyance as voluntary or fraudulent without a judgment and return of *nulla bona*, even though the debtor be a. non-resident? (Comstock v. Rayford, 40 Am. Dec., 108; Zechorie· v. Bowers, *Ibid.*, 111, 112.)

2. Our present Code and Statutes have abrogated all former statutory· law on the subject. (Grigsby v. Barr, &c., 14 Bush, 830.)

3. The court can now entertain jurisdiction only when there is a judg-· ment and return of *nulla bona*, or upon the grounds specified in subsection 7 of section 194, Civil Code. (Vance v. Campbell, 3. Ky. Law Rep., 449.)

4. In the case of Blalock v. Little, &c., the plaintiff alleges, but fails to prove, that the principal in the note, who is a resident of this. State, is insolvent, and therefore fails to show an exhaustion of legal remedies. (Martz v. Pfeifer, 4 Ky. Law Rep., 595; Napper· v. Yager, 3 Ky. Law Rep., 51.)

5. The debt of Ragan Brothers must be treated as one subsequent to· the conveyance. The account was current until merged in the note, and, therefore, the credits must be applied to the payment of the debts in the account in the order of time in which they were· made. (Kersey ·v. Bennett, 41 Am. Rep., 271; Miller v. Miller,. 39 Am. Dec., 598.)

6. The date of the deed determines whether the debt is prior or sub-· sequent, though unrecorded for a short time after its date. (Fletcher vs. Karl, 3 Ky. Law Rep., 335.)

7. The appellant could prove the agreement between father and son regardless of recitals in deed. (Beverley, &c., v. Noel, 4 Ky. Law Rep.. 985.)

Little, &c., v. Ragan Brothers, &c.

ROBERTSON, SMITH AND ROBBINS FOR APPELLEES.

1. A court of equity has jurisdiction to set aside a conveyance as fraud-
ulent where the creditor proceeds by attachment, although he may
not have a return of "no property." (Martz v. Pfeifer, 4 Ky.
Law Rep., 392; Vance v. Campbell, 3 Ky. Law Rep., 449.)

2. The fact that the debtor is a non-resident is alone sufficient to
authorize the court to subject property which he has fraudulently
conveyed. (Scott v. McMillen, 1 Litt., 302.)

3. A conveyance which is actually fraudulent is void, both as to prior
and subsequent creditors. (Haskell v. Wynne & Co., 3 Ky. Law
Rep., 54; Lowery v. Fisher, 2 Bush, 70; Doyle et al. v. Sleeper
et al., 1 Dana, 533; Farmers' Bank of Ky. v. Long, &c., 7 Bush,
337.)

4. The fact that defendants relied upon a false theory to find a con-
sideration is strong evidence of fraud, and makes out more than
a *prima facie* case against them.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment in three con-
solidated actions subjecting to the payment of the
respective debts of the plaintiffs a tract of sixty
acres of land conveyed by the debtor, J. F. Little,
to his two sons, J. S. and Joe Little, by deed exe-
cuted February 3, 1880.

The first of these actions was brought by Leach,
on a note given in 1876 by R. F. Jones and J. F.
Little. The second by Ragan Brothers, on a note
given September, 1880, by the firm of Little & Jones,
of which J. F. Little was at the time a member.
And the third by Blalock, on a note given in 1874
by N. W. & J. F. Little.

No personal judgment had, previous to the com-
mencement of either action, been rendered in favor
of the plaintiff against J. F. Little, and, of course,
there had been in neither case an execution and
return of no property found. But an attachment
was, at the commencement of each, issued and levied

upon the land, the plaintiffs stating substantially in their several petitions and affidavits, as grounds therefor, that the conveyance mentioned was made with the fraudulent intent to cheat, hinder, and delay the creditors of J. F. Little; that it was made without valuable consideration therefor, and that all the parties to it are non-residents of the State.

Under section 194, Civil Code, the plaintiff may, at or after the commencement of his action, have an attachment against the property of the defendant, upon the ground he is a non-resident of the State. This fact, however, is not alone sufficient to author-ize a judgment setting aside a conveyance of his estate, because fraudulent in the meaning of chapter 44, General Statutes, and subjecting it against the claim of his vendees to the payment of the plain-tiffs' debt. But it may be considered a rule settled by this court, that when statements are made in the petition or affidavit of the plaintiff, as provided in sub-section 7, section 194, Civil Code, and an at-tachment is thereupon duly issued and levied upon property thus alleged to be fraudulently conveyed by the debtor, a court of equity thereby acquires juris-diction to subject the property to the satisfaction of the plaintiffs' debt, and may so subject it, if it is established by the proof that the conveyance was made to cheat, hinder, and delay creditors, or as to existing liabilities was made without valuable con-sideration. And the jurisdiction may be thus ac-quired and exercised even before the plaintiff has exhausted his legal remedy.

It is admitted that the debts of Leach & Blalock

were existing liabilities when the conveyance was made; but counsel for appellants contend the debt of Ragan Brothers was created subsequently.

It appears that the note sued on was given in September, 1880, by the firm of Little & Jones, to Ragan Brothers for the balance of a running account for goods sold by one firm to the other, beginning before and continuing for some time after the date of the deed; and there was at that time, in fact, a considerable amount due on the account. We are, therefore, of the opinion that, although the subsequent purchases of goods from time to time exceeded in amount the payments made, resulting in a somewhat larger balance due at the date of the note than there was when the deed was executed, the debt of Ragan Brothers should be regarded as an existing liability in the meaning of the statute. But this is not a vital question, if it be true, as alleged by the plaintiffs, that the conveyance of the sixty acres of land was made for the fraudulent purpose of cheating, hindering, and delaying the creditors of J. F. Little. For in that case the property in controversy is subject to the debt, whether created before or after the date of the deed.

It is alleged and attempted to be proved that in 1863 J. F. Little, the father, purchased for J. S. Little, his son, then about five years of age, another tract of land containing fifty-two and one-half acres, and had it conveyed to him. That previous to 1869 *Shadrach* Little, a brother of J. F. Little, had, without right, sold and conveyed that tract to one Morris, who sold to Cary. And in 1869 J. F. Little executed

a mortgage upon a tract of one hundred and eighty-six acres, of which the sixty acres in dispute formed a part, to Cary, to secure him harmless in case J. S. Little, upon arriving at full age, should refuse to convey the title of the fifty-two and one-half acres to Cary. That J. S. Little, when he became of age, did convey that tract to Cary's vendee, and, thereupon, and in consideration therefor, J. F. Little conveyed the sixty acres to his two sons, J. S. Little and Joe Little, and not to the former alone.

This explanation of the consideration or reason for the conveyance of the sixty acres of land in February, 1880, is not only improbable, but is contradicted by the recitals of the mortgage, the deed from J. S. Little to Cary's vendee, and also the deed from J. F. Little to his two sons.

To accept it as true, we must not only believe, without any reason for it appearing, that J. F. Little caused made a deed of gift to his son when only five years of age, to the exclusion of his other children, of the fifty-two and one-half acres of land, but also that Shadrach Little, the brother of J. F. Little, afterwards wrongfully, and without any pretense of right, sold, received the consideration therefor, and attempted to convey the same land to Morris.

The deed for the fifty-two and one-half acres made by Smith in 1863 purports to be to *James Shadrach* Little, and was evidently intended to be to *Shadrach* Little, the brother, who paid the consideration, and not to J. S. or James *Shadrach*, the son of J. F. Little; and in the mortgage from J. F. Little to Cary, made in 1869, it is expressly recited that the

Sarrls v. Commonwealth.

deed from Smith was made by mistake to J. S. instead of Shadrach Little, and the same recital is contained in the deed made in 1879 by J. S. Little to Cary's vendee, and constitutes the only consideration therefor. Moreover, in the deed from J. F. Little to his two sons for the sixty acres in controversy, the reason appellants now give for making it is not stated at all, the only consideration expressed in it being love and affection.

Without the attempted explanation by appellants, the deed from J. F. Little to his two sons might be regarded simply as a conveyance without consideration, which, on its face, it appears to be, and thus fraudulent only as to creditors whose debts existed when it was executed. But this explanation is so palpably contradicted in every particular, and so unreasonable, as of itself to satisfactorily sustain the allegations contained in the several petitions of the plaintiffs, and to authorize the judgment of the lower court subjecting the land to the payment of their debts.

Judgment affirmed.