[Civ. No. 29518. Second Dist., Div. Four. Feb. 28, 1967.]

LENORE GOULD, Plaintiff and Respondent, v. MARTA FULLER, Defendant and Appellant.

Theodore J. Elias for Defendant and Appellant.

Mindlin & Levy and A. Marco Turk for Plaintiff and Respondent.

FOX, J.*—Plaintiff recovered a judgment against defendant in the amount of $14,775. Defendant has appealed.

Plaintiff is an assignee for collection purposes only. She is an employee in the office of Bisgeier, Breslaur & Co., certified public accountants and business managers. Ben Bisgeier was a friend of defendant Marta Fuller and her husband, Samuel Fuller, and from 1948 until February 1962 he and his firm acted as business manager for defendant and Mr. Fuller who was actively engaged in the entertainment field. They collected his salary and other income, deposited it in the bank and paid the living expenses, personal and other bills of the Fullers, kept the books covering their financial transactions and, generally, took care of their business affairs. Mr. Bisgeier and his firm also loaned the Fullers money from time to time.

In 1959 defendant and her husband decided to get a divorce. On August 27, 1959, a property settlement agreement was entered into between them. Shortly thereafter defendant obtained an interlocutory decree.

By the end of August 1959 the Fullers were indebted to Bisgeier and his firm in the amount of $14,775 of which $7,825 was for services rendered; the balance represented loans to them. On August 31, 1959, Mr. Fuller executed three promissory notes in favor of plaintiff''s assignors which grew out of these transactions and which are involved in the first, second, and third counts of the complaint. Defendant knew of the loans that had been made by Bisgeier and the services that had been rendered by the Bisgeier firm, all of which had occurred during the marriage of defendant to Fuller and prior to their execution of the property settlement agreement. Defendant had told Bisgeier, in substance, that he could always look to the property in her name for payment of these obligations and that when it was sold he and his firm

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

would be paid in full. In approximately April 1962 defendant advised Bisgeier and his firm that she was not indebted to him and his firm, but, on the contrary, he and his firm were indebted to her. This brought about the filing of the instant action.[1]

Defendant is the only appellant.[2]

The underlying basis for the liability that plaintiff is seeking to establish and enforce is that by making the property settlement agreement and the transfers of community property therein provided for to defendant, Fuller was left without substantial means; that by the terms of said agreement defendant obtained practically all of the community assets and left Fuller with substantially all of the community liabilities that had accumulated during the marriage without sufficient money or property to pay them. Thus, the liability asserted against defendant was a transferee liability only and was limited to the transferred property in defendant's possession (or the proceeds in lieu thereof since defendant has sold the property originally transferred to her by her husband). Plaintiff does not claim that defendant is liable personally for this indebtedness but rather that defendant is holding the proceeds from the sale of property transferred by Fuller to her, and that such proceeds are liable for the indebtedness here involved.

The underlying indebtedness did not arise merely from the execution and delivery of Fuller's promissory notes, but from the entire series of acts, circumstances and relationships alleged in the first three causes of action—of which the respective promissory notes were only an incident.

At this point it will be helpful to ascertain precisely the court's determination of the facts. The trial court found, *inter alia*: That on or about August 31, 1959, Fuller made, executed and delivered to the Bisgeier firm his promissory note (exhibit A to the complaint) in the principal sum of $5,250, with interest at 6 percent per annum, for good and valuable consideration, to wit, cash advances in said face amount made to defendant and Fuller, for their necessary and ordinary living expenses between August 15, 1957, and July 21, 1958, in the total amount of $6,750, less partial

---

[1]The complaint contained 21 causes of action. Counts 4 to 19, inclusive, were withdrawn as to defendant. The judgment was in favor of defendant on the 20th and 21st cause of action as well as on her cross-complaint.

[2]Mr. Fuller failed to appear and a default judgment was rendered against him.

repayment in the sum of $1,500 made by them between August 31, 1958, and August 7, 1959; that the sum of $100 only had been paid on said note, leaving a principal amount owing of $5,150.

That on or about August 31, 1959, Fuller made, executed and delivered to Bisgeier his promissory note (exhibit B to the complaint) in the principal sum of $2,800, with interest at 6 percent per annum, for good and valuable consideration, to-wit, cash advances in said face amount made to defendant and Fuller, for their necessary and ordinary living expenses between January 31, 1958, and March 5, 1958, in the total amount of $4,800 less partial repayment in the sum of $2,000 made by them between April 15, 1958, and August 20, 1959; that the sum of $1,000 had been paid on said note, leaving a principal amount owing of $1,800.

That on or about August 31, 1959, Fuller made, executed and delivered to the Bisgeier firm his promissory note (exhibit C to the complaint) in the principal sum of $7,825, with interest at 6 percent per annum, for good and valuable consideration, to-wit, accounting and management fees due, owing and unpaid by defendant and Fuller to the Bisgeier firm, accrued prior thereto; that no part of said note had been paid.

We quote the following findings:

"That it is true that throughout the time of making of cash advances to the defendants Marta Fuller and Samuel Fuller, referred to in the first, second and third causes of action of the complaint, the defendants Marta Fuller and Samuel Fuller were husband and wife and were living together in the county of Los Angeles, as husband and wife, in a common domicile and under the system of community property laws existing in the state of California; that it is true that assets acquired during the cohabitation of said defendants in the state of California from their income, thus constituting the community assets of said defendants' community, exceeded the sum of $250,000.00 over and above the community liabilities; that it is true that the defendant Marta Fuller consented to, participated in and acquiesced in the borrowing of all moneys from plaintiff's assignors herein as reflected in the first and second causes of action and in the rendering of services by plaintiff's assignors herein, as reflected in the third cause of action, and that said Marta Fuller had full knowledge of the terms, conditions and particulars thereof....
". . . . . . . . . . . . . .

"[T]he cash advanced and services rendered (as reflected in paragraphs 7, 14 and 18 of the complaint) by plaintiff's assignors to the defendants herein were used by the defendants Samuel Fuller and Marta Fuller to finance their living, for the management of their business and personal affairs and for the preservation and maintenance of the real property described in the complaint and that at all times prior to on or about August 31, 1959, the defendant Marta Fuller accepted the benefits of these cash advances and services rendered and used them, together with the defendant Samuel Fuller, for the maintenance of herself and the improvement of their assets. . . .

". . . . . . . . . . . .

"[T]he obligations to plaintiff sued upon in the first three causes of action of the complaint were created prior to the transfer of property from the defendant Samuel Fuller to the defendant Marta Fuller and continued to exist after the transfer of the property from the defendant Samuel Fuller to the defendant Marta Fuller; that the obligations sued upon in the first three causes of action of the complaint have remained in existence from the time of their inception prior to August, 1959, to the date hereof; the court finds that no novation took place upon acceptance by plaintiff's assignors of the promissory notes referred to in the first three causes of action of the complaint.

"The three promissory notes sued upon in the first three causes of action of the complaint herein were not delivered by the cross-defendant Samuel Fuller nor accepted by the cross-defendants Ben Bisgeier and Bisgeier, Breslauer & Co. in payment of the obligations that existed at the time of their execution and delivery but were delivered and accepted as evidence of said indebtednesses and the original indebtednesses alleged in the first three causes of action of the complaint herein continued to exist at the time of and after the delivery and acceptance of the promissory notes referred to in the first three causes of action of the complaint herein.

". . . . . . . . . . . . "

"[T]he indebtednesses sued upon in the first three causes of action of the complaint constituted community indebtednesses of the defendants Samuel Fuller and Marta Fuller incurred and in existence while said defendants were husband and wife and living as such and that the community property of said defendants was liable for said indebtednesses; further, the court finds that the defendant Marta Fuller is liable to

the plaintiff for the indebtednesses pleaded and alleged in the first three causes of action of the complaint by reason of the fact that she is the transferee of property, title to which had stood prior to August 27, 1959, in either the name of Samuel Fuller or in the names of Samuel Fuller and Marta Fuller, which property was, in fact, prior to said time, community property of said parties and the court finds that the defendant Marta Fuller acquired said property by reason of the property settlement agreement between Marta Fuller and Samuel Fuller subject to the claims of the then creditors of the defendant Samuel Fuller, among whom were plaintiff's assignors herein, to the extent of the claims set forth in the first three causes of action of the complaint herein.''

Under a factual picture such as that revealed by the foregoing findings, the community property is liable for debts incurred during the period of the marriage. The community remains responsible to the creditors for such debts even though the husband and wife acted in good faith and there was no fraudulent intent in making the transfer. (*Bank of America* v. *Mantz,* 4 Cal.2d 322, 326 [49 P.2d 279]; *Vest* v. *Superior Court,* 140 Cal.App.2d 91, 95 [294 P.2d 988]; 10 Cal.Jur.2d, Community Property, § 88, pp. 776-77, and § 90, p. 779.) The right of an existing creditor to have access to community property (or its proceeds) in payment of his debt cannot be impaired by an agreement between the husband and wife, or by court decree, allocating the property to the wife. *Frankel* v. *Boyd,* 106 Cal. 608 [39 P. 939], makes this point clear. There the husband had purchased property on credit while married. A divorce decree awarded the wife all of the community property. The creditor sued and was permitted to satisfy his judgment from the community assets awarded the wife. At pages 614-15, the court said:

''Had the husband by a voluntary conveyance transferred all of the community property to his wife, leaving himself without means, it is not doubted but that the property so transferred would have been liable to his creditors for existing debts.

''When the court assigned all the property to appellant [wife], it, in effect, did what in law the husband should have done under like circumstances, and the conclusion is reached that in such a case, where all the community property has been assigned to the wife, leaving the husband without separate property, the property so assigned is taken subject to the equitable claim of existing contract creditors, whose demands

are due, or to become due, on account of credit extended during the existence of the marital relation to the husband for the benefit of the community.

"...

"... Under such circumstances every moral consideration prompts the satisfaction of the demand from the community property. And we are of opinion the moral and legal obligations go hand in hand."

■ Bisgeier's receipt of Fuller's notes did not release Fuller or the community from the antecedent obligation to Bisgeier or to his firm. The findings of fact and conclusions of law of the trial court are in accord. ■ The presumption is that a note is not taken in payment of a pre-existing debt. (*Frank* v. *Repp & Mott*, 70 Cal.App.2d 407, 413 [161 P.2d 279].) The rule is well established that the giving of a note for an antecedent debt does not operate as an extinguishment of the debt unless such note is given and accepted under an express agreement that it constitutes payment. (*Comptoir D'Escompte* v. *Dresbach*, 78 Cal. 15, 20 [20 P. 28].)

Furthermore, the liability on the original obligation and the liability on the note upon non-payment, coexist. (*American Marine Paint Co.* v. *Tooley*, 53 Cal.App.2d 530, 538 [127 P.2d 960]; *Higgins* v. *Wortell*, 18 Cal. 331, 333-34.)

There was no such agreement here. Bisgeier testified to this effect, and his testimony was not contradicted.

■ Defendant argues that insofar as the three notes referred to in the first three causes of action are concerned, plaintiff's assignors were not existing creditors on August 27, 1959—the date on which the property settlement was executed and the transfers made by Fuller to his wife. This argument is based on the fact the notes were not executed until four days later—August 31. There is no merit in this argument. In cases involving asserted transfers of property in fraud of creditors, the courts examine into the situation and ascertain the original inception of the debt and determine the claimant's standing as of that time with respect to the transfer. In *First Nat. Bank of Belleville* v. *Merrick*, 103 N.J.Eq. 63 [142 A. 243], the court stated: " 'Existing creditors are, as the words imply, persons having subsisting obligations against the debtor at the time the fraudulent alienation was made. . . . The indebtedness will relate back to its original inception as regards the question constituting the claimant an existing creditor.' " In *Stout* v. *Stout*, 77 Ind. 537, the debtor owed plaintiff a certain sum of money at the

time he transferred his interest in a piece of property to his wife, who was the defendant in the action. Sometime later the debtor gave plaintiff a note for this debt. Plaintiff sued to set aside the conveyance to the debtor's wife on the ground it was fraudulent. One of the defenses was that, since plaintiff's note was taken after the conveyance, plaintiff was not entitled to attack the transfer. The court said at page 541: ". . . And, in an action of this kind, the taking of a note in no manner affects the right of the creditor to assail a conveyance which was fraudulent as against his original demand for which the note was given." Other cases declaring this rule are: *Rine* v. *Compton*, 115 W.Va. 379 [176 S.E. 429]; *Thomas* v. *Lye*, 37 Ill.App. 482; *Spuck* v. *Logan*, 97 Md. 152 [54 A. 989, 99 Am.St.Rep. 427]; *Little* v. *Ragan Bros.*, 83 Ky. 321.

Applying the principle of these authorities to the case at bench, it is apparent plaintiff's assignors were existing creditors. Bisgeier and his firm had extended credit to Fuller and the community by lending the Fullers money on which to live and in performing their accounting services and managing their business affairs without getting fully paid therefor. Obligation for these items had come into existence long before August 27, 1959—the date of the transfers of property. No "new" credit was extended by plaintiff's assignors upon Fuller executing the three notes.

 Defendant argues that the findings that the property settlement agreement of August 27, 1959, constituted a transfer which rendered Fuller insolvent and was made without fair or full consideration are not supported by the evidence.

 In this connection it must be remembered that the credibility of the witnesses, the weight to be given to their testimony, the determination of conflicts, and which of two or more inferences should be drawn from the evidence, are all matters within the exclusive province of the trial court.

 Also, the appellate court starts with the presumption that the evidence supports each finding of fact, and that the burden is on the appellant to demonstrate that there is no substantial evidence to support the challenged findings.

 The court found that, by the terms of the property settlement agreement the Fullers entered into, "the defendant Marta Fuller obtained substantially all of the community assets,"[3] and that defendant Samuel Fuller "assumed sub-

---

[3] The principal asset of the Fullers was the house and acreage. The property, subject to two encumbrances, went to defendant under the property settlement agreement. It was sold in 1963 for $230,000.

stantially all of the liabilities of the community which had accumulated by reason of the marriage.'' The court also found that ''the transfer of the property from the community to defendant Marta Fuller as her sole and separate property had the effect of rendering the defendant Samuel Fuller insolvent,'' and ''that said transfer was made without fair or full consideration.''

With respect to the liabilities assumed by Fuller under the property settlement agreement the court found:

''. . . . That it is also true that by the terms of said property settlement agreement between the defendants Marta Fuller and Samuel Fuller, dated on or about August 27, 1959, the defendant Samuel Fuller assumed liabilities of the community which included the liabilities sued upon in the first three causes of action of the complaint plus life insurance premiums set forth in the property settlement agreement plus the payment of the mortgages on the residential and acreage property transferred to the defendant Marta Fuller in the approximate sum of $44,000.00 plus city and county taxes plus income taxes accrued to the date of said property settlement agreement plus $5,000.00 attorney's fees to counsel for the defendant Marta Fuller incurred in connection with the marital affairs of the parties to August 27, 1959, plus a liability to the Bank of America in the amount of approximately $12,300.00 plus attorney's fees to his own counsel in the approximate amount of $4,106.00 plus other minor obligations more fully reflected in the Exhibits on file herein.'' (Find. 7 in part.)

Under the property settlement agreement Fuller received the following:

''(a) Those certain items of furniture, furnishings, works of art and other personal property heretofore transferred to husband or to be transferred to husband under the terms of a separate written memorandum previously entered into between the parties.

''(b) A 1957 Cadillac El Dorado automobile, 1959 California license No. JPL 377, engine No. 5762053538, now in the possession or under the control of the husband.

''(c) All right, title and interest of wife in and to 375 shares of stock in Globe Enterprises, Inc., a California corporation registered in the name of husband.

''(d) All cash in the possession of or under the control of husband in a sum not exceeding $3,000.00.

"(e) Wearing apparel, clothing, jewelry, and personal effects of or for the husband."

Bisgeier testified he handled the affairs of *Globe* Enterprises, that he was an officer, director and stockholder of the corporation; that on August 28, 1959—the day after the property settlement agreement—the corporation showed a deficit of $165,563.50, that the corporation was insolvent, and its stock had no market value. He further stated that if this deficit was ever to be recouped it would have been from the income from the pictures made by *Globe*; but, subsequent to August 27, 1959, *Globe* only made one picture and that picture did not make a profit—in fact, *Globe* did not make any profits subsequent to August 27, 1959.

Bisgeier prepared a financial statement for Fuller as of September 30, 1959, which showed him to be solvent. However, in arriving at that result Fuller was credited with stock valued at $50,000 which, according to Bisgeier's testimony, was the 375 shares of *Globe* Enterprises which we have seen had no market value and appeared to be virtually worthless. The trial court could readily have concluded that this stock had no value.

We shall now examine the record to see the likely value of the property Fuller received as a result of the property settlement. Under paragraph (a) above, he received "certain items of furniture, furnishings, works of art and other personal property," and under paragraph (b) the "1957 Cadillac El Dorado automobile." On exhibit 8, the financial statement that Bisgeier prepared for Fuller as of September 30, 1959, for the bank, he appears to have included items (a) and (b) *supra,* under the heading "personal property" and gave it a value of $25,000. On this subject the transcript shows the following questions and answers while Bisgeier was under cross-examination"

"Q. In making up your Exhibit 8, which is Mr. Fuller's September 30, '59 statement, did you give any value to any of the works of art or rare books that Mr. Fuller owned?

A. I believe there is a $25,000 value in there for personal property.

Q. Yes, sir. Is that what that consists of?

A. That consists of all personal property, automobiles, scripts, and whatever."

Thus, the value of "scripts" or any "literary properties" that Fuller may have had, have not been overlooked, though none are specifically mentioned in the settlement agreement.

As to paragraph (c) *supra,* the "375 shares of stock in Globe Enterprises, Inc."—which corporation, as we have seen, was on August 28, 1959 (the day after the settlement agreement), insolvent with its stock having no market value, could reasonably have been found by the trial court to have no value. In this connection defendant asserts that "Mr. Fuller had . . . $50,000 worth of unlisted stocks and bonds. . . ." There is no mention of any bonds in the settlement agreement. The only securities mentioned in that agreement are the "375 shares of stock in Globe Enterprises, Inc.," the value of which we have commented on above. It was this stock that was listed in exhibit 8 (to which defendant refers) and given a value of $50,000.

Under paragraph (d), quoted above, Fuller was given all cash in his possession in a sum "not exceeding $3,000," and under paragraph (e) defendant was, of course, given his wearing apparel, personal effects, etc.

Thus, under the settlement agreement defendant received, apart from his wearing apparel and personal effects, personal property, including the automobile, valued at $25,000 and cash "not exceeding $3,000." This makes the total of the assets he received under the agreement $28,000.

We will now list a few of the liabilities the court found he assumed.

| | | |
|---|---|---|
| 1. The liabilities sued upon in the first cause of action— | | $14,775 |
| 2. Attorney's fee for his wife, plus costs— | | $ 5,050 |
| 3. Bank loan— | | $12,300 |
| 4. Counsel fees for himself— | | $ 4,106 |
| | Total | $36,231 |

These figures indicate Fuller did not receive sufficient assets under the property settlement to pay even these few obligations. If further exploration of Fuller's financial involvement is desired, reference may be made to the portion of Finding 7 quoted above.

Furthermore, at a conference on July 30, 1959, which was attended by Fuller and his wife and her attorney, Harry J. Miller, Esq., who then represented Fuller in property settlement negotiations (but who withdrew therefrom on August 18 because Fuller would not follow his advice) informed Fuller that a transfer of the property without any provision for him would leave him "hopelessly broke." Fuller admitted on the witness stand that his former attorney (apparently

Mr. Miller) advised him that the transfer of the property to Mrs. Fuller under the property settlement agreement would render him insolvent. Bisgeier, who had handled the business affairs and accounting for the Fullers for many years, expressed his professional opinion that Fuller was insolvent on September 30, 1959.

Without going into the question in greater detail, it is apparent that the trial court was amply justified in finding that the property transfers to defendant under the property settlement agreement "had the effect of rendering the defendant Samuel Fuller insolvent"; and that said transfer "was made without fair or full consideration."

To reach the conclusion advocated by defendant on this point would require this court to reweigh the evidence and draw inferences contrary to those drawn by the trial court. Under established appellate procedure we have no power to do this.

■ Defendant vainly argues that Bisgeier and his firm were not injured by the alleged fraudulent conveyance and therefore cannot attack it. Bisgeier testified he had not paid either his firm or himself because "there were other more pressing obligations." A portion of the funds under his control represented loans he had made to the Fullers. The effect of his paying such obligations would have been the equivalent of putting that money in the account and then paying himself back. As he said on the witness stand, that "wouldn't have made any sense." Bisgeier could undoubtedly have taken funds as they came in and paid himself and his firm but he testified the money was needed to pay "all sorts of bills, and there were living expenses during that period." It would appear that Bisgeier made a very practical approach to a very difficult financial situation and hardly deserves to be condemned for placing himself and his firm at the end of the creditors' line.

Furthermore, Bisgeier testified that defendant told him he need not worry because she would "sweep the streets" before she would see him lose any money, that there would always be enough value in the house for him to get paid. When defendant obtained refinancing on the home, she told him there would not be any money available for him but when the house was sold there would be plenty of equity in the house and at that time she would take care of all her obligations. Bisgeier believed and relied on these statements.

Under these circumstances defendant is estopped from asserting that plaintiff's assignors were not injured because they allegedly could have collected the amount of their claims from other sources.

In support of her position defendant relies on *Haskins* v. *Certified Escrow & Mtge. Co.*, 96 Cal.App.2d 688 [216 P.2d 90], and *Bank of Willows* v. *Small*, 144 Cal. 709 [78 P. 263]. Examination of those cases indicates that plaintiff's assignors do not fall within the rationale of either of those cases. Plaintiff's assignors did not voluntarily place themselves in the position of irrevocably abandoning their right to challenge the validity of the transfer of the community assets into the hands of defendant.

There is no merit in the argument that Bisgeier and his firm were estopped to assert that the property settlement agreement rendered Fuller insolvent and were estopped from asserting their claim herein against defendant by reason of such transfer. This contention is based upon the theory that Bisgeier was involved in the transaction between defendant and her husband which he now attempts to disregard. This contention is completely disposed of by the findings of fact which are not attacked upon the ground that they are lacking in evidentiary support. The trial court found:

"[P]laintiff's assignors are not estopped to assert their rights, as far as the first three causes of action of the complaint are concerned against the defendant Marta Fuller by reason of the fact, here found, that the defendant Marta Fuller was not induced to change her position, nor did she change her position, by reason of any act or by reason of any inaction on the part of plaintiff's assignors nor did plaintiff's assignors gain any advantage for themselves by reason of any action or inaction on their part." (Find. 89.) ". . . Bisgeier did not counsel the defendant Marta Fuller, nor aid her in the transfer of property from the defendant Samuel Fuller to the defendant Marta Fuller but that the extent of his participation in such transfer was his attendance at one meeting between the defendant Samuel Fuller and the defendant Marta Fuller at the request of counsel for both of said parties and his supplying of financial statements to both of said counsel and that, as a matter of fact, the cross-defendant Ben Bisgeier advised the defendant Samuel Fuller and the defendant Marta Fuller against the transfer of property from the defendant Samuel Fuller to the defendant Marta Fuller." (Find. 90.)

The issue of estoppel of plaintiff's assignors was before the trial court. It was resolved in favor of plaintiff. Defendant is now merely rearguing the merits of this point. There was no evidence of defendant's reliance.

■ Defendant misconceives the nature of plaintiff's first three causes of action in arguing that they each are barred by the statute of limitations. As heretofore indicated *this is a transferee action as to defendant.* The applicable statute of limitations as to her is that provided in Code of Civil Procedure section 338, subdivision 4 (three years). This position finds support in *Pedro* v. *Soares,* 18 Cal.App.2d 600, 609 [64 P.2d 776], where the court stated: "This action which is based on a fraudulent transfer of property to defeat creditors, is not barred by the statute of limitations. . . . This suit was commenced June 11, 1934, within three years of the time of the fraudulent transfer of property. We are of the opinion section 338 of the Code of Civil Procedure governs the time within which an action of this nature must be commenced. Subdivision 4 of that section provides that an action must be commenced within three years when it consists of:

" 'An action for relief on the ground of fraud or mistake. . . .' "

Plaintiff's position is, with respect to the first three causes of action insofar as they apply to defendant, that a fraudulent conveyance of community property occurred on or about August 27, 1959; that by reason of such transfer plaintiff had three years within which to file an appropriate action to enforce her rights against defendant transferee (*i.e.,* until August 26, 1962). The instant action was filed on March 16, 1962, well within said three-year period.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.