*26
 
 Opinion
 

 BENKE, Acting P. J.
 

 Under our system of community property law, the marital community is liable for debts incurred by either spouse before or during marriage. The first question we confront in this case is whether, upon the death of one spouse, such liability continues. The second question we confront is whether, if such liability attaches to a deceased spouse’s estate, the Legislature limited the time in which such liability may be asserted. We answer both questions in the affirmative and affirm the judgments of the trial court in favor of trustees of the estate of a deceased spouse.
 

 I
 

 Factual and Procedural Background
 

 At all relevant times the Rancho Carlsbad mobilehome park was owned by Western Land & Development Company (Western), a general partnership consisting of David F. Dawes and Ronald S. Schwab. In the early 1980’s the tenants
 
 [1]
 
 of the Rancho Carlsbad park engaged in litigation against Western, Dawes and Schwab with respect to rent increases Western attempted to impose on the tenants. Eventually, the tenants brought three actions in which Dawes was named as a defendant. In those actions, the tenants sought to rescind rent increases imposed in 1981 and 1982 and damages.
 

 In 1983, many years prior to any final resolution of the tenants’ litigation, Dawes and his wife, Dorothy Dawes, transferred their community property to an inter vivos trust. Among other goals, the trust was designed to minimize the amount of federal gift and estate tax which might be payable upon the death of either spouse. The trust instrument provided that during the lifetimes of the settlors, the community property would remain community property and the trust would be revocable. The trust instrument further provided that upon death, the community property would be divided into three subsidiary trusts. The first trust, the so-called A trust, would be funded with the survivor’s one-half share of the community property and would be revocable by the survivor.
 

 The second trust, the so-called B trust, would be in the maximum amount allowable under the federal gift and estate tax marital deduction and would be funded from the decedent’s one-half share of the community property. The third trust, or so-called C trust, would contain any residue from the decedent’s one-half of the community property. The B and C trusts would be
 
 *27
 
 irrevocable. The surviving spouse was entitled to the income from the B and C trusts during his or her lifetime, and upon his or her death the corpus of the trust would pass to the Daweses’ children and the children of their deceased daughter. The trustees of the trust were the Daweses’ two surviving children, defendants and respondents David Alan Dawes and Stuart E. Dawes.
 

 Dorothy Dawes died in January 1990 and the terms of the trust instrument became operative. Her one-half of the community property estate passed to the B and C trusts and David F. Daweses’ one-half share passed to the A trust.
 

 On November 17, 1992, a judgment in favor of the tenants and against David F. Dawes was entered in one of the three actions. Thereafter, in 1993 and 1996 additional judgments in the tenants’ favor were entered in the other two actions they had brought against Western, David F. Dawes and Schwab.
 

 Shortly after the first judgment was entered in the tenants’ favor, David F. Dawes filed bankruptcy petitions on his own behalf and on behalf of Western. The bankruptcy court determined, among other matters, that it did not have jurisdiction over the B and C trusts.
 

 On December 29, 1995, the tenants levied writs of execution on defendants and respondents David Alan Dawes and Stuart E. Dawes as trustees of the B and C trusts. The trustees then filed a petition in probate court seeking a determination trust assets were not subject to execution on the tenants’ judgment.
 
 [2]
 
 On August 5, 1996, before judgment on the trustees’ probate petition was entered, the tenants filed two complaints against the trustees seeking a declaration the assets in the B and C trusts were subject to the judgment entered in the tenants’ favor. The trustees demurred to the complaints.
 

 The probate court entered judgment in favor of the trustees. The probate court found that upon the death of Dorothy Dawes, the assets transferred to the B and C trusts lost their community property character and their liability for David F. Dawes’s debts. In the alternative, the probate court found the tenants’ attempts to execute against trust assets were time barred. Finally, the probate court found that due process did not permit execution of judgment against trust assets where neither Dorothy Dawes nor the trustees had been named as defendants.
 

 
 *28
 
 The trial court hearing the trustees’ demurrers sustained them on the grounds the tenants’ complaints were untimely and judgments in favor of the trustees were entered.
 
 [3]
 
 The tenants filed notices of appeal from the order of the probate court and the judgments dismissing their complaints. We consolidated the appeals.
 

 II
 

 Issues
 

 On appeal the tenants contend that, notwithstanding Dorothy Dawes’s death, the assets held in the B and C trusts are liable for the judgments entered against David F. Dawes and that the liability of the assets was asserted in a timely manner.
 

 Ill
 

 Discussion
 

 A.
 
 Post Mortem Liability for Community Debts
 

 From the time of statehood in the middle of the last century until 1984, when the Legislature acted to alter the system, our courts held that as a matter of equity and fairness to creditors, one spouse who received community property following termination of a marriage received the community property subject to liability for community debts incurred by the other spouse during the marriage. (See
 
 Frankel
 
 v.
 
 Boyd
 
 (1895) 106 Cal. 608, 612-615 [39 P. 939];
 
 Bank of America etc. Assn.
 
 v.
 
 Mantz
 
 (1935) 4 Cal.2d 322, 327 [49 P.2d 279];
 
 Gould
 
 v.
 
 Fuller
 
 (1967) 249 Cal.App.2d 18, 24 [57 Cal.Rptr. 23];
 
 Head
 
 v.
 
 Crawford
 
 (1984) 156 Cal.App.3d 11, 18 [202 Cal.Rptr. 534], disapproved on other grounds
 
 Droeger
 
 v.
 
 Friedman, Sloan & Ross
 
 (1991) 54 Cal.3d 26, 36 [283 Cal.Rptr. 584, 812 P.2d 931].)
 

 In
 
 Frankel
 
 v.
 
 Boyd
 
 the court held that community property a wife received in a divorce proceeding was subject to a creditor’s bill brought by her former husband’s creditor with respect to a debt incurred during marriage. The court relied on earlier cases which reached the same result with respect to community property received upon the death of a spouse. The court stated: “In
 
 Packard
 
 v.
 
 Arellanes
 
 [(1861) 17 Cal. 525], the court, speaking through Cope, J. said: ‘Our whole system by which the rights and property between
 
 *29
 
 husband and wife are regulated and determined is borrowed from the civil and Spanish laws, and we must look to these sources for the reasons which induced its adoption and the rules and principles which govern its operation and effect. The relation of husband and wife is regarded by the civil law as a species of partnership, the property of which, like that of any other partnership, is primarily liable for the payment of its debts. ... It is the well-settled rule of the law that the debts of the partnership have priority of claim to satisfaction out of the community estate. [Citation.] . . . The legislature intended to establish a similar relationship as to property as that existing in the civil law. The contracting of debts is one of the incidents of that relationship, and it would be unreasonable to suppose that the intention was to do away with so important a principle as that of the liability of the community property for their payment. We think that for all purposes connected with the administration of such property the debts of the community are to be regarded, not as the mere private and individual debts of the husband, but as obligations involving the liability of each of the members of the community.’ ”
 
 (Frankel
 
 v.
 
 Boyd, supra,
 
 106 Cal. at pp. 613-614.)
 

 As will become evident in the second part of this opinion, it bears emphasis that a spouse’s postmarital liability for debts incurred by a former or deceased spouse is based on one spouse’s receipt of property which in fairness should have been applied to the other spouse’s debts. (See
 
 Frankel
 
 v.
 
 Boyd, supra,
 
 106 Cal. at pp. 611-612;
 
 Gould
 
 v.
 
 Fuller, supra,
 
 249 Cal.App.2d at p. 21.) Such liability is not based on any legal interest the creditor has in the particular property transferred. As the court in
 
 Frankel
 
 v.
 
 Boyd
 
 explained: “That the [creditor] has no specific lien upon the property sought to be held liable for the satisfaction of his debt may be conceded.
 

 “Had his judgment or execution established such lien there would have been no necessity for this action.
 

 “The nature and purpose of a creditor’s bill is to enable the creditor to apply to the payment of his debt property of the judgment debtor which, by its nature, cannot be taken in an execution at law, or to convert the holder of a legal estate into a trustee and call for a conveyance, or to have it sold in satisfaction of his claim, or to aid the creditor in reaching property of his debtor by removing fraudulent judgments or conveyances which defeat his remedy at law.”
 
 (Frankel
 
 v.
 
 Boyd, supra,
 
 106 Cal. at p. 611; see also
 
 Gould
 
 v.
 
 Fuller, supra,
 
 249 Cal.App.2d at p. 21.) Significantly, given the nature of the creditor’s claim, the court in
 
 Gould
 
 v.
 
 Fuller
 
 held that the three-year limitation period which governed fraudulent transfers, Code of Civil Procedure section 338, governed the action against the transferee spouse. (249 Cal.App.2d at p. 32.)
 

 
 *30
 
 In 1984 the Legislature materially altered the postmarital liability of spouses. The Legislature determined that, under most circumstances, after a marriage has ended, it is unwise to continue the liability of spouses for community debts incurred by former spouses. Accordingly, the Legislature enacted former Civil Code section 5120.160, subdivision (a)(2), which provided that upon division of the community estate by way of dissolution: “The separate property owned by a married person at the time of the division and the property received by the person in the division is not liable for a debt incurred by the person’s spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property. Nothing in this paragraph affects the liability of property for the satisfaction of a lien on the property.” (Stats. 1984, ch. 1671, §9, p. 6021.) In 1992 former Civil Code section 5120.160 was reenacted without substantive change as Family Code section 916.
 

 The Law Revision Commission Comment to Family Code section 916 states: “When enacted in 1984 (as former Civil Code Section 5120.160), subdivisions (a)(2)-(3) reversed the former case law rule that a creditor may seek enforcement of a money judgment against the former community property in the hands of a nondebtor spouse after dissolution of the marriage. See e.g.,
 
 Bank of America N.T. & S.A.
 
 v.
 
 Mantz,
 
 4 Cal.2d 322 [49 P.2d 279](1935).
 

 “Subdivision (a)(2) makes clear that former community estate property received by the nondebtor spouse at division is liable only if the nondebtor spouse is assigned the debt in division.” (Cal. Law Revision Com. com., 29C West’s Ann. Fam. Code (1994 ed.) § 916, p. 351.)
 

 Importantly, however, “[w]hen the Legislature enacted [former Civil Code section 5120.160], it was contemplated that ‘[i]n allocating the debts to the parties, the court in the dissolution proceeding should take into account the rights of creditors so there will be available sufficient property to satisfy the debt by the person to whom the debt is assigned, provided the net division is equal.’ ”
 
 (Lezine
 
 v.
 
 Security Pacific Fin. Services, Inc.
 
 (1996) 14 Cal.4th 56, 75 [58 Cal.Rptr.2d 76, 925 P.2d 1002], quoting Recommendation Relating to Liability of Marital Property for Debts (Jan. 1983) 17 Cal. Law Revision Com. Rep. (1984) pp. 23-24, fn. omitted.)
 

 When a community estate is terminated by way of the death of a spouse, community debts are treated somewhat differently. Under Probate Code section 11440, the surviving spouse, the personal representative, or an interested party may petition the probate court for an allocation of debts
 
 *31
 
 between the surviving spouse and the estate of the deceased spouse. Under section 11440, subdivision (a), the personal representative and the surviving spouse may agree to an allocation subject to a determination by the probate court that the agreement substantially protects the rights of interested persons. In the absence of such an agreement, the probate court is required to apportion the debt between the surviving spouse and the estate on the same basis it would be required to employ during marriage. (Prob. Code, § 11444, subd. (b).)
 

 In contrast to the provisions of Probate Code section 11444, when a deceased spouse’s property is not subject to any administration but passes directly to the surviving spouse, the surviving spouse’s liability for debts incurred by the deceased spouse is governed by Probate Code section 13550 et seq. Under section 13550, the surviving spouse who receives community property without probate administration
 
 “is personally liable
 
 for the debts of the deceased spouse chargeable against the property described in Section 13551 to the extent provided in Section 13551.” (Italics added.) Probate Code section 13551 in turn provides that the liability created by Probate Code section 13550 shall not exceed the fair market value of the community property and the decedent’s separate property which passed to the survivor without administration. Claims against a surviving spouse under Probate Code section 13550 must be brought within one year of the death of the deceased spouse. (Prob. Code, § 13554, subd. (c); Code Civ. Proc., § 366.2, subd. (a)(1).)
 

 The problem posed here—the liability of a deceased spouse’s estate for community debts incurred by a surviving spouse—is apparently not the subject of any directly applicable substantive statute. The marriage was not terminated by way of dissolution and a judicially approved division of the community property; thus, the substantive bar to liability created by Family Code section 916 has no application. Moreover, there was no judicially approved allocation of debts between the trustees and David F. Dawes which arguably might protect the trustees from the tenants’ claim under Probate Code section 11444.
 

 Although the trustees suggest that we do so, we are not inclined to create a bar to substantive liability by way of analogy to the dissolution and allocation provisions set forth in Family Code section 916 or Probate Code section 11444, subdivision (b). Aside from important considerations of stare decisis and separation of powers, the principal difficulty we face in doing so in this case is the lack of any judicial supervision over the allocation of assets and liabilities of the. community estate. Our Supreme Court has expressly found that judicial supervision was a condition contemplated by
 
 *32
 
 the Legislature in revoking the preexisting rule of continuing liability for community debts. (See
 
 Lezine
 
 v.
 
 Security Pacific Fin. Services, Inc., supra,
 
 14 Cal.4th at p. 75.) The express continuation of a surviving spouse’s liability set forth in Probate Code section 13550 is further evidence the Legislature’s desire to eliminate post mortem liability for community debts was closely connected to the availability of judicial supervision over the allocation of community debts.
 

 In sum then, we agree with the tenants insofar as they argue the trustees did not receive Dorothy Dawes’s share of the community estate entirely free from liability for debts incurred by David F. Dawes during the Daweses’ marriage.
 

 B.
 
 Statute of Limitations
 

 As we have noted, in at least one case a claim based upon receipt of community property and growing out of debts incurred by a former spouse was treated as a fraudulent conveyance subject to the three-year statute of limitations set forth in Code of Civil Procedure section 338. (See
 
 Gould
 
 v.
 
 Fuller, supra,
 
 249 Cal.App.2d at p. 32.) Arguably, the tenants’ claims in this case are also in the nature of a fraudulent conveyance action and, in the absence of any other more directly applicable statute, would be governed by either Code of Civil Procedure section 338 or Civil Code section 3439.09, the statute of limitations for claims under the recently enacted Uniform Fraudulent Transfer Act.
 

 However, as the trustees point out, the Legislature has adopted a more directly applicable statute. In 1990 the Legislature amended former Code of Civil Procedure section 353 to shorten the time in which claims against decedents may be asserted. In particular, the Legislature added subdivisions (b), (c) and (d) to former Code of Civil Procedure section 353. As enacted, former Code of Civil Procedure section 353, subdivision (b), stated in pertinent part: “Except as provided in subdivisions (c) and (d), if a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced within one year after the date of death, and the time otherwise limited for the commencement of the action does not apply. Subject to Chapter 8 (commencing with Section 9350) of Part 4 of Division 7 of the Probate Code, the time provided in this subdivision for commencement of an action is not tolled or extended for any reason.” (Stats. 1990, ch. 140, § 1, p. 1172.) Subdivision (b) of Code of Civil Procedure section 353 was reenacted without substantive change as Code of Civil Procedure section 366.2 in 1992.
 

 
 *33
 
 Subdivision (d) of former Code of Civil Procedure section 353, which would be applicable to Dorothy Dawes’s estate, stated: “If a person against whom an action may be brought died on or after July 1, 1988, and before January 1, 1991, and before the expiration of the time limited for the commencement of the action, and the cause of action survives, an action may be commenced before the earlier of the following times:
 

 “(1) January 1, 1992.
 

 “(2) One year after the issuing of letters testamentary or of administration, or the time otherwise limited for the commencement of the action, whichever is the later time.” (Stats. 1990, ch. 140, § 1, p. 1172.)
 

 The repeal of former Code of Civil Procedure section 353 and adoption of Code of Civil Procedure section 366.2 did not have any effect on cases to which Civil Procedure section 353, subdivision (d), applied. (21-22 Cal. Law Revision Com. Rep. (Apr. 1992) p. 895.)
 

 The statute was enacted because of concern the four-month claims period which governed probated estates was not constitutionally sound if applied to creditors who did not have actual notice of a probate administration. The Law Revision Commission believed a one-year statute running from death would pass constitutional muster because “. . . it allows a reasonable time for the creditor to discover the decedent’s death, and it is an appropriate period to afford repose and provide a reasonable cutoff for claims that soon would become stale.” (Recommendation Relating to Notice to Creditors in Estate Administration (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) pp. 507, 513, fn. omitted.)
 

 By its terms, former Code of Civil Procedure section 353, subdivision (d), bars the tenants’ attempts to recover from the trustees. The levies of execution they served on the trustees and their declaratory relief action were actions within the meaning of the statute. (See Code Civ. Proc., §§ 21, 363.) Moreover, those actions were commenced after January 1, 1992.
 

 The tenants contend former Code of Civil Procedure section 353, subdivision (d), does not apply to their claims against the trustees because they believe the claims are not “based upon a liability of the person” within the meaning of former Code of Civil Procedure section 353, subdivision (b), and current Code of Civil Procedure section 366.2. The tenants argue that because the judgments they are attempting to enforce are for debts incurred by David F. Dawes and since their ability to recover on those debts is limited to the amount of community property the trustees received, the debts are not
 
 *34
 
 based upon any personal liability of Dorothy Dawes within the meaning of the statute. We disagree.
 
 [4]
 

 By its terms, the statute speaks of a “liability of the person,
 
 whether arising in contract, tort, or otherwise.”
 
 (Former Code Civ. Proc., § 353, subd. (b), current Code Civ. Proc., § 366.2, subd. (a)(1), italics added.) Thus the principal question we must consider is the nature of the claims the tenants are asserting against the trustees. In doing so, we must bear in mind that the drafters of former Code of Civil Procedure section 353 and current Code of Civil Procedure section 366.2 believed the limitation period the statute imposes serves “the strong public policies of expeditious estate administration and security of title for distributees, and is consistent with the concept that a creditor has some obligation to keep informed of the status of the debtor.” (Recommendation Relating to Notice to Creditors in Estate Administration,
 
 supra,
 
 20 Cal. Law Revision Com. Rep. (1990) p. 512.)
 

 First, we note that when a
 
 surviving spouse
 
 is asked to pay debts incurred by a deceased spouse, the Legislature has expressly determined the survivor is “personally liable” for debts incurred by the deceased spouse but that the extent of such personal liability is limited to the value of the community property received or held by the surviving spouse. (Prob. Code, §§ 13550, 13551.) Significantly, such claims are expressly made subject to the time limitations set forth in Code of Civil Procedure section 366.2.
 

 Plainly, enactment of Probate Code section 13550 et seq. raises a question of fairness to the respective interests of surviving and deceased spouses. It is difficult to discern any reason for providing a surviving spouse greater protection from claims incurred during a marriage than is afforded to his or her deceased spouse’s estate. Indeed, given the need to promptly resolve claims against a decedent’s estate and distribute its assets, it does not seem likely that the Legislature would intend that third party distributees would be exposed to claims against community assets for a longer period of time than
 
 *35
 
 an actual surviving member of the marital community. Given these circumstances, what we discern from enactment of Probate Code section 13550 is that it is less a prescription of law than a description of what the law otherwise imposes: personal liability upon the receipt of assets which in fairness should be devoted to meeting the debts of the transferor.
 

 Our conclusion about the descriptive nature of Probate Code section 13550 is consistent with the cases that have treated postmarital liability as transferee liability which arises as a result of receiving property which should be applied to the transferor’s debt. (See
 
 Frankel
 
 v.
 
 Boyd, supra,
 
 106 Cal. at pp. 613-614,
 
 Gould
 
 v.
 
 Fuller, supra,
 
 249 Cal.App.2d at p. 21.) Importantly, we are aware of no case in which the need to prevent injustice has ever been so great that in addition to creating liability on behalf of a transferee spouse, creditors have been provided anything in the nature of a lien against or title to particular property the transferee spouse received upon termination of a marriage. Indeed, the authority we have discovered appears to have flatly rejected the notion the creditor has any legal interest in a transferee spouse’s report. (See
 
 Frankel
 
 v.
 
 Boyd, supra,
 
 106 Cal. at p. 611 [conceded that creditor has no specific lien on transferee spouse’s property].)
 
 [5]
 
 Rather, as under Probate Code section 13550, the cases have merely found that the underlying personal liability of the transferor spouse is limited to the value of property received. (See, e.g.,
 
 Gould
 
 v.
 
 Fuller, supra,
 
 249 Cal.App.2d at p. 21.)
 

 It is also helpful to recognize this treatment of postmarital liability is in no sense unique. Indeed, it is quite similar in fundamental respects to the liability imposed on transferees under California’s version of the Uniform Fraudulent Transfer Act (UFTA), Civil Code section 3439 et seq. In particular we note that where a transfer is voidable under UFTA, “the creditor may recover judgment for the value of the asset transferred ... or the amount necessary to satisfy the creditor’s claim, whichever is less. The judgment may be entered against the following: [^D(l) The first transferee of the asset or tiie person for whose benefit the transfer was made. [^Q(2) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.” (Civ. Code, § 3439.08, subd. (b).) The liability of a transferee spouse for community debts is much the same: a judgment against
 
 *36
 
 the transferee is limited to the value of the property received. (See Prob. Code, § 13550.)
 

 Accordingly, we find that any liability growing out of the transfer of community property upon the death of Dorothy Dawes was a personal liability subject to the time limitations set forth in former Code of Civil Procedure section 353, subdivision (d). Because the levies of execution and declaratory relief action were not filed within those time limits, the probate court and the trial court did not err in entering judgments in favor of the trustees.
 

 We appreciate that given the protracted nature of the litigation which they pursued against David F. Dawes, the tenants believe application of former Code of Civil Procedure section 353, subdivision (d), is particularly unfair to them.
 
 [6]
 
 However, in adopting the limitation period in the statute, the Legislature plainly recognized the risk that in unusual circumstances creditors would not be able to bring an action within one year of death. In rejecting any longer limitation period, the drafters of the statute stated: “Even under the existing four-month claim period it is unusual for an unpaid creditor problem to arise. A year is usually sufficient time for all debts to come to light. Thus it is sound public policy to limit potential liability to a year; this will avoid delay and procedural complication of every probate proceeding for the rare claim that might arise more than a year after the decedent’s death.” (Recommendation Relating to Notice Creditors in Estate Administration,
 
 supra,
 
 20 Cal. Law Revision Com. Rep. (1990) p. 513.) Given this drafting history we are in no position to relieve tenants from operation of the statute.
 

 Order and judgments affirmed.
 

 Haller, J., and McIntyre, J., concurred.
 

 Appellants’ petition for review by the Supreme Court was denied April 15, 1998.
 

 [1]
 

 The tenants are the plaintiffs and appellants in this action, Irving J. Rich et al.
 

 [2]
 

 The trustees also filed motions in the tenants’ actions against Western and David F. Dawes for orders recalling and quashing the levies. Those motions were granted. However, the tenants have not filed an appeal from those orders.
 

 [3]
 

 The trustees had also argued the complaints were barred by the doctrine of res judicata. However, the trial court rejected the tenants’ reliance on res judicata because the judgment in the probate action was not yet final.
 

 [4]
 

 We assume, without deciding, that “the liability of the person” language which appears in former Code of Civil Procedure section 353, subdivision (b), also applies to claims governed by former section 353, subdivision (d). We note that although the phrase “liability of the person” is not repeated in former section 353, subdivision (d), there is no indication the Legislature intended that the time limits imposed by subdivision (d) would apply to a broader class of claims than the time limits imposed by subdivision (b). Rather, bearing in mind that the overall intent of the Legislature in enacting former Code of Civil Procedure section 353 was to protect decedents’ estates from stale claims (see Recommendation Relating to Notice to Creditors in Estate Administration,
 
 supra,
 
 20 Cal. Law Revision Com. Rep. (1990) p. 507), a practical reading of the statute tends to support the tenants’ argument that the only difference in treatment the Legislature intended with respect to persons who died before 1991 and those who died after that date was with respect to the time in which their respective creditors were required to bring actions following their deaths.
 

 [5]
 

 In this regard the circumstances described in
 
 Lezine
 
 v.
 
 Security Pacific Fin. Services, Inc.,
 
 are illustrative. There a creditor bank not only had the right to collect a debt incurred by one spouse, but it had reduced its claim to a judgment lien against community property before the community property was divided. Under those circumstances, the Supreme Court had no difficulty in permitting the bank to enforce its lien rights against property the nondebtor spouse received in the marital dissolution action. (14 Cal.4th at pp. 73-75.) Here, in contrast, the tenants had not liquidated their claims against David F. Dawes, let alone reduced them to any lien against identified property at the time Dorothy Dawes died.
 

 [6]
 

 We note that a creditor may file a petition to probate a debtor’s estate and a creditor’s claim against the estate. (Prob. Code, § 8000;
 
 Estate of Edwards
 
 (1908) 154 Cal. 91, 95 [97 P. 23].) We also note that when a creditor files a claim against an estate, the limitation period set forth in former Code of Civil Procedure section 353, subdivision (d), is tolled.
 
 (Anderson
 
 v.
 
 Anderson
 
 (1995) 41 Cal.App.4th 135, 139-140 [48 Cal.Rptr.2d 642].) We express no opinion as to whether these procedures were available to the tenants following Dorothy Dawes’s death.