[No. A125080. First Dist., Div. Two. June 21, 2011.]

JOHN J. DACEY, Plaintiff and Appellant, v.
WILLIAM TARADAY et al., Defendants and Respondents.

[No. A125670. First Dist., Div. Two. June 21, 2011.]

JOHN J. DACEY, Plaintiff and Appellant, v.
WILLIAM TARADAY, as Administrator, etc., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

***Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion.

COUNSEL

Dacey & Sitkin, James M. Sitkin, John J. Dacey; Nielsen, Haley & Abbott, James C. Nielsen and Jennifer S. Cohn for Plaintiff and Appellant.

Downey Brand, William R. Warne, Richard K. Sueyoshi, Cassandra M. Ferrannini; Bien & Summers, Elliot L. Bien, Amy E. Margolin; Reed Smith, Paul D. Fogel, Raymond A. Cardozo; Freidberg & Parker, Port J. Parker and Suzanne M. Alves for Defendants and Respondents and for Defendant and Appellant.

OPINION

**LAMBDEN, J.**—John J. Dacey and Burton J. Goldstein (Goldstein), who is now deceased, were partners at the law firm of Goldstein, Barceloux & Goldstein (GB&G). GB&G and the law firm of Desmond, Nolan, Livaich & Cunningham (Desmond) had been handling a number of inverse condemnation cases against the State of California (the flood cases) since 1986. Desmond and GB&G agreed to share equally in any fee recovery after payment of other attorneys. In 1990, the partners of GB&G signed an agreement for the dissolution and windup of GB&G (the dissolution agreement), and this agreement provided that the flood cases were "assign[ed]" to Goldstein and specified the percentages each former partner of GB&G would receive from the attorney fees recovered in the flood cases.

Goldstein died in 2001 and the flood cases finally settled in 2004, resulting in a substantial total fee recovery (the fee recovery). William Taraday, the administrator of the estate of Burton J. Goldstein (Taraday, the administrator, or the estate), settled with numerous attorneys participating on behalf of plaintiffs in the litigation of the flood cases. Taraday agreed to reduce the estate's share in the fee recovery and to increase Desmond's share.

Dacey did not file a creditor's claim in the probate court and Taraday paid him nothing from the fee recovery. Dacey sued Taraday, as the administrator of the estate, for breach of the dissolution agreement and rescission of the dissolution agreement. He also sued Taraday, as an individual, Janet Cross Goldstein (Janet),[1] Barrie Taraday (Barrie), and Gail Hart (Hart) for, among other torts, replevin and conversion.[2] He also set forth claims against

---

[1] Janet, the wife of Goldstein, died while this case was pending on appeal. Taraday was appointed a special administrator of her estate for the limited purpose of representing her interest in this appeal.

[2] Barrie and Hart are Goldstein's daughters.

Desmond for conversion and "Distribution in Violation of a Lien." All of the parties filed summary judgment and/or summary adjudication motions, and the lower court ruled, among other things, that the statute of limitations under Code of Civil Procedure section 366.2, subdivision (a)[3] did not apply to Dacey's claims against the estate because the administrator, not Goldstein, breached the dissolution agreement.

The matter proceeded to a bifurcated bench trial and the court found against Dacey on all of his claims against the individual defendants. It found in favor of Dacey in his breach of contract claim against the estate. Dacey appealed and Taraday, in his capacity as the administrator, filed a cross-appeal from that portion of the judgment finding in favor of Dacey on his breach of contract claim. At the estate's request, we consolidated the appeals.

The pivotal issue in Dacey's appeal is the interpretation of the dissolution agreement. The lower court ruled that the agreement expressly transferred the legal interest in the flood cases to Goldstein, and that the parties' course of conduct supported this interpretation of the agreement. The court therefore concluded that the administrator had the authority to renegotiate the fee agreement between Desmond and GB&G in the flood cases. Dacey objects to the lower court's interpretation of the dissolution agreement and maintains that the flood cases remained an asset of the partnership and therefore the administrator did not have the authority to modify the original 1986 fee agreement. He also makes various other challenges to the court's rulings on his claim of rescission, his tort claims against various defendants, and his request for punitive damages against Taraday, individually. We are not persuaded by any of Dacey's arguments.

The estate appeals from that portion of the judgment finding in favor of Dacey on his breach of contract claim. The estate maintains, among other things, that Dacey's claim was barred because he failed to file a creditor's claim as required by the Probate Code and his claim was untimely under the statute of limitations under section 366.2, subdivision (a). We conclude that the estate waived raising the creditor's claim issue on appeal and that section 366.2 does not apply to Dacey's breach of contract claim because Taraday, not the decedent, breached the contract. Accordingly, we affirm the judgment.

## BACKGROUND

*The Formation of GB&G*

In 1985, Goldstein, Dacey and Joseph Ehrlich formed the law firm GB&G. About one year later, Jeffrey A. Baruh joined the law firm.

---

[3] All further unspecified code sections refer to the Code of Civil Procedure.

In 1986, 1,350 plaintiffs hired Goldstein and Desmond as co-lead counsel to handle their claims in flood cases, which involved actions for inverse condemnation and tort damages resulting from flooding caused by a break in the Yuba River levee. A letter agreement in 1986 provided for Desmond and GB&G to share equally in any fee recovery after payment of other attorneys (the 1986 fee agreement). Desmond and GB&G also agreed, among other things, to split equally the costs of prosecuting the actions.

*Dissolving GB&G*

Ehrlich withdrew from the partnership on September 30, 1989. Primarily because of financial pressures being experienced by the law firm, the partners agreed to dissolve GB&G.

The partners of GB&G agreed that Goldstein, through his new firm Goldstein & Goldstein, would assume all responsibility for the representation and cost of the flood cases. At that time, according to Dacey, the parties estimated the flood cases to be worth "hundreds of millions of dollars." These estimates were based on client damage information, calculations prepared by GB&G, and the opinions of the partners and others. The parties also recognized that the flood cases would require significant resources, monetarily and in labor. Since Goldstein was to assume these costs, Baruh and Dacey agreed, among other things, to reduce their individual shares of the fee recovery in the flood cases.

Goldstein, Dacey, and, primarily, Baruh drafted the agreement for the dissolution and windup of GB&G. The partners signed the dissolution agreement on April 30, 1990, although they did not execute the agreement until August 19, 1992. The integrated agreement announced, "As a result of various changes in circumstances among the Partners, the Partners desire to dissolve and windup the affairs of the Partnership and liquidate the assets of the Partnership on the terms and conditions set forth herein." The agreement specified that Goldstein would be permitted to use the name "Goldstein & Goldstein" for his law firm after the dissolution of GB&G.

The dissolution agreement also provided the following: "As of May 1, 1990, no further professional services shall be rendered in the name of [GB&G], no further business transacted for the Partnership except action necessary for the winding up of its affairs . . . , the distribution or liquidation of its assets, and the distribution of the proceeds of the liquidation. . . . Prior to April 30, 1990, the Partners shall assign every uncompleted Contingent Fee Case, to one or another of the Partners on such terms and conditions as shall be agreeable to the clients involved and the Partners; and the rendition of professional services from and after May 1, 1990[,] shall be by such

individuals and other law firms, if any, in which they may respectfully become partners or otherwise be associated. With respect to those cases referred to as the [flood cases], the firm of Goldstein & Goldstein shall be substituted in place of the partnership." The agreement noted that the partners expressly agreed that the unfinished business doctrine "shall not be applicable for any purpose, including, without limitation, the division of proceeds collected on matters existing at the time of dissolution."

Attached to the dissolution agreement was the "Partnership Division of Certain Fees and Costs on Dissolution of [GB&G]" (exhibit 5).[4] The dissolution agreement incorporated exhibit 5 by reference. The dissolution agreement provided that exhibit 5 "specifically provided for the allocation and division of, as between the Partnership and themselves individually, of certain contingent and other non-hourly fee matters."

Exhibit 5 specified that GB&G was to receive "75% of the net contingent recovery" in the lawsuits involving "Monterey Hills." With regard to the Monterey Hills actions, exhibit 5 pointed out that the contract with another law firm had been amended to provide GB&G with 40 percent and the other law firm with 60 percent of the net contingent recovery, since the other law firm was "carrying the main burden of the litigation." Also mentioned was the Safeway litigation, and the dissolution agreement stated the following: "The contract of GB&G with Safeway Stores, in addition to hourly charges, contains a percentage contingency of any recovery." It noted that Goldstein and Baruh assigned their interest in the contingent fees to Dacey. It added, "From any contingent recovery, GB&G shall receive the sum of $42,000, representing reimbursement for its contingent fee interest, unless the total contingent fee interest due to [Dacey] is equal to or less than $84,000, in which case, GB&G shall be entitled to fifty (50%) percent of any such recovery."

With regard to the flood cases, the dissolution agreement stated that GB&G was entitled to approximately 35 percent of the net contingent recovery as its portion of fees. It declared that Goldstein would "assume responsibility for continuing legal services in the cases, and the advancing of costs, disbursements and expenses, as necessary." It further specified that Dacey and Baruh would "not be required to advance further costs unless agreed in writing." Goldstein was to be repaid costs, disbursements, and expenses advanced by him after May 1, 1990.

Exhibit 5 further specified the following: Goldstein "shall receive 70.73% of the remaining total recovery (including without limitation, 70.73% of

---

[4] The dissolution agreement erroneously referred to this document as "exhibit 4."

costs, disbursements and expenses advanced by GB&G). NOTE: This is intended to be a different formula than that used for Monterey Hills cases, by the allocation to [Goldstein] of 70.73% of all costs, disbursements and expenses, advanced by GB&G, in addition to his attorney's fees." With regard to Dacey and Baruh, exhibit 5 provided that they "shall receive 29.27%, divided between them in proportion to their share in GB&G."

Paragraph 7 in exhibit 5 set forth the following: "As to these fees and costs, disbursements, and expense allocation agreements, [Goldstein] and [Dacey] shall have the right to assign all or any part of their individual percentages to other attorneys who participate in the litigation."

Dacey and Baruh read the dissolution agreement, including exhibit 5, prior to executing the documents on August 19, 1992, and the agreement provided "that each is hereby bound and obligated" by the dissolution agreement's terms. The agreement also provided that it could not be amended or modified unless such amendment was in writing and approved by the partners.

Neither Dacey nor Baruh ever provided Desmond with a copy of the dissolution agreement. They also never contacted Desmond regarding the terms of the dissolution agreement and never indicated to Desmond that they retained any financial interest in the fee recovery from the flood cases.

*The Flood Cases*

After GB&G dissolved, Goldstein continued prosecuting the flood cases as cocounsel with Desmond. Goldstein hired David Collins as an associate of Goldstein & Goldstein to work on the flood cases, and Goldstein agreed to pay Collins 20 percent of his 70.73 percent share of the attorney fees for the flood cases.

The litigation in the flood cases "was protracted and bitterly fought." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 76 [87 Cal.Rptr.2d 754].) The matter proceeded to a trial and the plaintiffs lost on some theories, but won on an inverse condemnation (takings) theory. (*Id.* at p. 75.) In 1999, the Court of Appeal affirmed the defense jury verdict finding no dangerous condition of public property, reversed the inverse condemnation liability verdict in favor of the plaintiffs, and remanded for another trial on inverse liability. (*Id.* at pp. 75–76.)

Goldstein requested that his former partners Dacey and Baruh agree to reduce their share of the fee recovery. Dacey and Baruh rejected Goldstein's request.

In the fall of 2000, Goldstein became physically and financially unable to participate personally in the prosecution of the flood cases. With Desmond's consent, he retained the services of Attorney Frederick Jacobsen to represent his interest in the cases.

Dacey was aware of Goldstein's inability to participate in the litigation of the flood cases, and knew that the cases were scheduled for retrial in early 2001. Goldstein died on January 2, 2001. Dacey did not contact any attorney to offer assistance. Neither Dacey nor Baruh ever contacted Desmond or any of the 1,350 clients in the flood cases at any time during the litigation.

The retrial in the flood cases occurred in 2001. A four-month court trial resulted in a judgment for the defendants. The plaintiffs appealed.

In January 2002, the probate court appointed Taraday, Goldstein's son-in-law, as administrator of the estate with will annexed. Taraday retained probate attorney Theodore Kolb. Kolb told Taraday to send Dacey and Baruh a notice of administration of the estate. Taraday mailed the notices on February 8, 2002. He mailed the notice to Dacey's former address and did not include the suite number in the address for Baruh; both Dacey and Baruh denied ever receiving the notices.

The Court of Appeal in *Paterno v. State of California* (2003) 113 Cal.App.4th 998 [6 Cal.Rptr.3d 854] reversed the judgment in the flood cases as to the State of California and remanded with directions to the lower court to enter judgment for the plaintiffs and conduct any further necessary proceedings. A settlement followed in the spring of 2004, resulting in a substantial fee recovery. Taraday contacted Desmond and represented to Desmond that the estate was authorized to receive payment of Goldberg's share of the fee recovery.

After the settlement, Desmond claimed entitlement to more than the 50 percent share it had under the 1986 agreement. Desmond asserted that GB&G, Goldstein & Goldstein, and the estate had failed to meet their obligations under the 1986 agreement.

The estate executed a settlement with the Desmond firm in late July 2005, which modified Desmond's share to 60 percent and reduced the estate's share to 40 percent. Both agreed that Desmond would hold back $1 million in a separate account until June 30, 2006, to cover various contingencies; the money would thereafter be paid out. Taraday testified that he settled because he preferred to settle rather than litigate disputes, he recognized that Desmond had more resources, and he appreciated the amount of work

Desmond did after Goldstein died. After paying other attorneys, Desmond received $64,304,960.88. Desmond gave the estate approximately $24 million.[5]

Kolb, in a letter dated September 7, 2005, advised the estate that Dacey's "failure to file a claim within the time allowed by law bars [his] right to receive any payment from the Estate."

*Dacey's Complaint and Pretrial Motions and Stipulations*

In letters dated November 17, 2005, Taraday notified Dacey and Baruh of the fee recovery. The letters declared that Dacey and Baruh would not receive any of the fee recovery because of their failure to file creditors' claims within the statutory period.

On January 12, 2006, Dacey and Baruh filed a civil action in the superior court against Taraday both as administrator and individually, alleging a cause of action for breach of contract. The original complaint did not identify the attorney fee recovery from the flood cases as a partnership asset. Dacey and Baruh filed an amended complaint on March 1, 2006, which also did not identify the fee recovery from the flood cases as a partnership asset. Taraday and the estate filed a demurrer to the amended complaint. They alleged that Dacey failed to file a creditor's claim and the statute of limitations under section 366.2 barred his claims. The trial court issued a tentative ruling sustaining the demurrer without leave to amend on the basis that the claims were time-barred under section 366.2. The court permitted supplemental briefing after the hearing and, subsequently, overruled the demurrer.

On October 20, 2006, Dacey and Baruh filed the operative second amended complaint against Taraday, as administrator, for breach of the dissolution agreement and for rescission. They identified the fee recovery from the flood cases as a partnership asset. They also sued the Goldstein family for, among other torts, replevin and conversion. They added Desmond as a defendant under counts of conversion and "Distribution in Violation of a Lien." They sought punitive damages against Taraday, as an individual. Prior to trial in the civil action, Baruh settled with the estate.

Dacey, the estate, and Desmond filed motions for summary judgment and summary adjudication. The estate argued, among other things, that the statute of limitations under Code of Civil Procedure section 366.2 and Probate Code sections 9000, 9100, 9103, and 9352 barred Dacey's claims.

---

[5] The calculation of the estate's 40 percent was based on a net recovery that was lower than the actual amount obtained by Desmond. Desmond negotiated with another law firm to have it reduce its share of the recovery and Taraday permitted Desmond to retain the benefit of obtaining this agreement to a fee reduction.

The trial court denied Desmond's motion for summary judgment. It also rejected Dacey's motions for summary judgment or summary adjudication against Desmond and against the estate.

Although the trial court denied the estate's motion for summary judgment, it granted in part its motion for summary adjudication. It granted the estate's motion as to Dacey's sixth cause of action for breach of fiduciary duty, fifth cause of action for fraud, and request for punitive damages. With regard to the request for punitive damages, the court found that the estate relied on counsel's advice in good faith after full disclosure of the facts and therefore exemplary damages were not recoverable against the estate.

The trial court denied the estate's motion for summary adjudication as to the remainder of Dacey's claims. The court explained that it did not agree with the estate that section 366.2 barred all of Dacey's causes of action for failing to file a creditor's claim within one year of Goldstein's death. It explained that Goldstein had not breached the dissolution agreement before he died and therefore Dacey did not have a cause of action at the time of Goldstein's death. The court found that it was Taraday, not Goldstein, who engaged in the alleged wrongdoing and therefore the statute of limitations did not begin to run when Goldstein died.

The parties stipulated to a bench trial that was bifurcated into a first phase regarding the dissolution agreement. The court was to determine whether the dissolution agreement assigned the flood cases to Goldstein with all rights, responsibilities, and liabilities or whether it provided for the flood cases to be a partnership asset following the dissolution of GB&G. The parties agreed that the material facts underlying this dispute were essentially undisputed and that the matter was an issue of contract interpretation and therefore within the sole province of the court.

*The Bench Trial and Statement of Decisions*

The first phase of the trial began on May 14, 2008, before Judge James McBride. The sole witnesses were Dacey and Baruh. At the end of the first phase of the trial, on May 19, 2008, the court orally ruled that the contracting parties did not intend for the flood cases to remain an ongoing partnership asset of GB&G following the firm's dissolution. On May 20, 2008, Desmond moved for judgment under section 631.8.

The bench trial continued on May 22, 2008, for the court to consider Dacey's remaining claims. Dacey and Taraday were the only witnesses during this phase of the trial.

On March 20, 2009, the trial court filed its amended and corrected statement of decision regarding Dacey's action against the estate. The court

first addressed the dissolution agreement and whether it assigned the flood cases to Goldstein with all rights, responsibilities, and liabilities or whether the flood cases remained a partnership asset after GB&G dissolved. In deciding that the agreement made it clear that the parties did not intend the flood cases to be a partnership asset, the court found the language of the dissolution agreement to be "clear and unambiguous" and "not reasonably susceptible to any other interpretation." It stressed that section 6.1 of the agreement stated that the contracting parties intended to "assign" the contingent fees cases listed in exhibit 5 to the agreement, and that included the flood cases, to one or more of the partners. The court noted that the partners expressly agreed to substitute the law firm of Goldstein & Goldstein in place of GB&G in the flood cases.

The court also found that the course of conduct of the parties was consistent with the express language of the dissolution agreement. The court pointed out that it was undisputed that after GB&G dissolved, Goldstein was solely responsible for the flood cases and it was undisputed that neither Dacey nor Baruh performed any legal services or contributed any costs to the flood cases after the dissolution of GB&G, including after the death of Goldstein. The court found that neither Dacey nor Baruh treated the flood cases like a partnership asset after dissolution, but treated these cases "in a manner consistent with the intent to maintain their contractual right to reduced percentage of the fee recovery and no attendant risk or responsibility following GB&G's dissolution. The former partners were cognizant prior to and at the time of dissolution of the substantial potential value of the FLOOD CASES, but they also had an appreciation of the substantial labor and financial resources needed to pursue those cases to conclusion."

The court concluded that the dissolution agreement created a contractual right of recovery against Goldstein for a portion of the fees for the flood cases and that it was the intent of Dacey and Baruh, as evinced by their conduct and the clear language of the dissolution agreement, "to assign fully the rights and obligations" of the flood case to Goldstein in return for a reduction in their percentage of any recovery in the flood cases. The court ruled that the estate was liable to Dacey for breach of contract and that Dacey was entitled to damages in the amount of $4,330,708.64. The court also issued an order granting Dacey's motion for prejudgment interest.

With regard to Dacey's rescission claim, the court found that the estate's failure to pay Dacey his share of the fee recovery was not a material breach justifying the remedy of rescission.

The court also rejected Dacey's causes of action for conversion and replevin against the Goldstein family. The court found that Taraday had a

good faith defense to his personal liability for conversion and replevin as set forth in Probate Code section 9651 because the evidence showed that he relied on the advice of his attorney. Attorney Kolb told Taraday that the failure of Dacey and Baruh to file timely creditors' claims prevented them from claiming any right to any of the fee recovery. With regard to the claims of Taraday and the other defendants, the court rejected the defense of unclean hands to defeat any and all of Dacey's causes of action.

On this same date, March 20, 2009, the court issued its statement of decision regarding Dacey's claims for conversion and distribution in violation of a lien against Desmond. The court rejected both of Dacey's claims, finding that Dacey failed to establish ownership or right to possession of the fee recovery at the time Desmond distributed a portion of the fee recovery to Taraday. The court also determined that GB&G's lien rights were assigned and transferred to Goldstein when GB&G dissolved and therefore Desmond properly distributed a portion of the fee recovery to Taraday. The court granted Desmond's motion for judgment under section 631.8. It entered a defense judgment in favor of Desmond and against Dacey.

In its statement of decision regarding Desmond, the court noted that Dacey argued for the first time that the flood cases were an asset allegedly held as a tenancy in common by all of the partners following GB&G's dissolution. After hearing argument on this issue, the court rejected this claim. The court found that this argument was "wholly inconsistent with the testimony, admissions, verified pleadings and exhibits offered" by Dacey. Additionally, this argument contradicted the dissolution agreement and the course of conduct of Dacey. The court also concluded that the authority cited by Dacey did not support this argument.

*Appeals*

Dacey appealed from the judgment involving the estate and the Goldstein family and the judgment in favor of Desmond. The estate filed a cross-appeal from the judgment entered in favor of Dacey's breach of contract claim. The estate filed an unopposed motion to consolidate the appeals and we granted that motion.[6]

## DISCUSSION

### I. *Dacey's Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[6] Without determining the relevance of these documents, we also granted Taraday's unopposed motion for this court to take judicial notice of two documents.

*See footnote, *ante*, page 962.

## II. *The Estate's Appeal*

### A. *Dacey's Failure to File a Creditor's Claim*

#### 1. *Introduction*

■ The estate maintains that Dacey is not entitled to any portion of the fee recovery because, after Goldstein's death, he failed to file a creditor's claim in the probate proceedings as required by the Probate Code. Probate Code section 9100 states that a creditor must file a claim in a probate proceeding either within four months after the court appoints a personal representative, or within 60 days after notice. "The time restriction on filing creditor's claims is intended to ensure the representative of an estate is notified of all claims within a reasonable period so that the estate can be expeditiously settled and distributed to the legatees or heirs." (*Varney v. Superior Court* (1992) 10 Cal.App.4th 1092, 1101 [12 Cal.Rptr.2d 865].) Failure to comply with this time requirement bars the claim. (Prob. Code, § 9002, subd. (b).) Generally, the time requirement cannot be waived either by the estate's personal representative or the probate court. (*Nathanson v. Superior Court* (1974) 12 Cal.3d 355, 361–362 [115 Cal.Rptr. 783, 525 P.2d 687].)

Dacey responds that the estate waived raising this issue on appeal. The estate points to the places where it raised this issue in the trial court, but the question remains whether the issue was sufficiently raised in the lower court to preserve it for appeal.

#### 2. *The Record in the Lower Court*

The estate first raised the issue of Dacey's failure to file a creditor's claim in a footnote in a section related to the statute of limitations under section 366.2 in its papers filed in support of its demurrer to Dacey's complaint. In the footnote, the estate wrote: "Defendants nevertheless anticipate that plaintiffs may attempt to argue that [section 366.2, subdivision] (b)(1) somehow excepts this matter from the requirements of [section 366.2, subdivision] (a). Any such effort, however, would be misplaced, and the law is clearly contrary to any such argument. Indeed, Part 4 (commencing with Section 9000) of Division 7 of the Probate Code (as referenced in [§ 366.2, subd.] (b) itself) clearly imposes the one-year statute within the context of probate administration. Specifically, Probate Code section 9100[, subdivision] (c) provides, '[n]othing in this section shall be interpreted to extend or toll any other statute of limitations or to revive a claim[] that is barred by the statute of limitations. The reference in this subdivision to a "statute of limitations" includes Section 366.2 of the Code of Civil Procedure.' [Citation.] Reading

both Section 366.2[, subdivision] (b)(1) and Section 9100[, subdivision] (c) together, a creditor is put on notice of the need to file within a year. In fact, 'if the one-year deadline is approaching and no probate has been opened, the wise approach for the plaintiff is to open a probate proceeding as a creditor and file a timely creditor's claim.' [Citation.]" (Boldface & italics omitted.)

The trial court issued a tentative ruling sustaining the estate's demurrer without leave to amend. At the hearing, Dacey argued that he was claiming a right to specific property and therefore the statute of limitations did not apply. After the hearing on the demurrer, the court permitted supplemental briefing.

In its supplemental papers, the estate asserted that Probate Code section 9000, subdivision (a) "defines 'claim' as 'a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated: (1) Liability of the decedent, whether arising in contract, tort, or otherwise.' " The estate noted that the statutes exempted specific property from the definition of "claim," and that Dacey was attempting to "avoid the implications of section 366.2 by arguing that Goldstein's liability under the dissolution agreement is not a liability at all, and that the property at issue is really 'specific property,' somehow insulated from the language of section 366.2." The estate contended that Dacey was not claiming a right to specific property and, consequently, section 366.2 applied. The estate also argued that the Probate Code statutes "can operate independently to bar a claim" and quoted the following from a Court of Appeal decision: " 'If a claim is not filed within the claims filing period of Probate Code section 9100, or within the one-year limitation period of Code of Civil Procedure section 366.2, a creditor will be forever barred from asserting a claim against the decedent.' [Citation.]" The estate concluded that Dacey's failure to file a claim within one year of Goldstein's death was "fatal to [his] present action."

The court overruled the estate's demurrer to the first amended complaint and, subsequently, Dacey filed his second amended complaint.

The estate filed a motion for summary judgment and argued that all of Dacey's claims were barred "by the statute of limitations set forth in [Code of Civil Procedure section] 366.2, . . . Probate Code sections 9000, 9100, 9103, and/or 9352." Under the heading related to section 366.2, the estate mentioned the following: "Plaintiffs' claims are clearly barred by section 366.2, as well as Probate Code section 9100[, subdivision] (a), because they are all founded upon plaintiffs' respective demands as creditors for payment of Goldstein's contingent debt to them under the Dissolution Agreement."

When denying the estate's summary judgment motion, the trial court ruled that the statute of limitations under section 366.2 did not apply. The court did

not make any independent ruling on Dacey's failure to file a creditor's claim. The estate never objected to this ruling on the ground it failed to address any argument regarding a creditor's claim; nor did the estate raise this issue at trial.

3. *Waiver*

The estate argues that the foregoing was sufficient to preserve on appeal the issue of Dacey's failure to file a creditor's claim. (See, e.g., *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 650 [40 Cal.Rptr.3d 501].) "The critical point for preservation of claims on appeal is that the asserted error must have been brought to the attention of the trial court." (*Id.* at p. 649.)

Here, a claim based on failure to file within the claims filing period of the Probate Code was mentioned in conjunction with the statute of limitations under section 366.2, but was not presented as an independent defense. Accordingly, we conclude that this issue was not sufficiently preserved for appeal as an *independent basis* for rejecting Dacey's breach of contract claim.

The estate asserts that, even if the issue was not sufficiently preserved, it could raise this issue for the first time on appeal because Dacey's failure to file a claim represents an incurable defect in Dacey's pleading. (See *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 831, fn. 18 [26 Cal.Rptr.3d 104].) The estate acknowledges that older cases have held that this particular defect cannot be raised for the first time on appeal (e.g., *Falkner v. Hendy* (1895) 107 Cal. 49, 53 [40 P. 21]), but maintains that the rationale for concluding there was waiver does not apply to the present case because Dacey had the opportunity to supply "the requisite pleading or proof" (see *Burmester v. McNear* (1919) 42 Cal.App. 527, 529 [183 P. 832]).

■ We do not agree that the failure to plead compliance with Probate Code section 9100 represents an incurable defect. Courts have held that in some limited circumstances the time requirement for filing a creditor's claim can be waived or the estate may be estopped from relying on it when the decedent's representative has induced a creditor not to file a timely claim. (See, e.g., *Varney v. Superior Court, supra,* 10 Cal.App.4th at pp. 1101–1102 [tolled the expiration of time for filing proposed creditor's claim]; see also *Satterfield v. Garmire* (1967) 65 Cal.2d 638, 645 [56 Cal.Rptr. 102, 422 P.2d 990]; *Katz v. A. J. Ruhlman & Co.* (1945) 69 Cal.App.2d 541, 545–546 [159 P.2d 426]; *Estate of Sturm* (1988) 201 Cal.App.3d 14, 18 [246 Cal.Rptr. 852].)

In the present case, the estate failed to assert that Dacey's claims were barred solely on the basis of his failure to comply with Probate Code section

9100 and the trial court never had the opportunity to consider whether the facts of the present case supported a finding that the period should be tolled or that estoppel applies. Accordingly, we conclude that the estate failed to preserve for appeal the issue that Dacey's failure to comply with the Probate Code and file a timely creditor's claim bars his breach of contract claim.

## B. *The Application of Section 366.2 to Dacey's Breach of Contract Claim*

### 1. *Background*

The estate argued in its summary judgment motion that Dacey's claims were time-barred under section 366.2, because under this statute Dacey had to file his action within one year of Goldstein's death. Goldstein died on January 2, 2001, and Dacey did not file his complaint until more than five years later on January 12, 2006.

The trial court rejected this argument and cited *Estate of Yool* (2007) 151 Cal.App.4th 867, 877 [60 Cal.Rptr.3d 526] (*Yool*), for holding that section 366.2 does not apply "if the wrongdoing does not precede the decedent's death." The lower court noted that section 366.2 may bar the claim, even if the cause of action has not accrued, if the liability was against the decedent and existed at the time of death. (See *Bradley v. Breen* (1999) 73 Cal.App.4th 798 [86 Cal.Rptr.2d 726]; *Battuello v. Battuello* (1998) 64 Cal.App.4th 842 [75 Cal.Rptr.2d 548], superseded by § 366.3.) Since undisputed facts established that Goldstein did not breach the dissolution agreement, the court determined that Dacey had no cause of action existing at the time of Goldstein's death and section 366.2 did not apply.

The estate argues that the lower court erred in its interpretation and application of section 366.2.

### 2. *Standard of Review*

The estate is challenging the lower court's interpretation of the statute and the application of section 366.2 to undisputed facts. It is well established that we apply a de novo standard of review to the construction of a statute based on undisputed facts. (*Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 178 [35 Cal.Rptr.3d 826].)

■ When interpreting a statute, "[o]ur fundamental task . . . is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) When determining what the Legislature meant, " '[t]he statutory language itself is the most reliable indicator, so we start with the

statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' " (*Martinez v. Combs* (2010) 49 Cal.4th 35, 51 [109 Cal.Rptr.3d 514, 231 P.3d 259].)

3. *Interpreting Section 366.2*

a. *The Statute's Language*

■ Section 366.2 is a "general statute of limitations for all claims against a decedent." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 255 [75 Cal.Rptr.3d 511].) Section 366.2, subdivision (a) provides: "(a) If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."

Subdivision (b) of section 366.2 states that the limitations period "shall not be tolled or extended for any reason except as provided in any of the following, where applicable: [¶] . . . [¶] (2) Part 4 (commencing with Section 9000) of Division 7 of the Probate Code (creditor claims in administration of estates of decedents)."

Since it is undisputed that Dacey filed his lawsuit more than one year after Goldstein's death, his breach of contract claim against the estate is time-barred if section 366.2, subdivision (a) applies. It is also indisputable that Goldstein's obligation to Dacey arose from the dissolution agreement and, prior to his death, he was personally liable to Dacey for a percentage of the fee recovery from the flood cases. The litigation in the flood cases was still pending at the time of Goldstein's death; therefore, the contractual obligation regarding the fee recovery was in existence at the time of Goldstein's death, but had not accrued. It is undisputed that Goldstein never repudiated or otherwise breached the dissolution agreement while alive. Rather, the administrator, acting on behalf of the estate, breached the dissolution agreement.

The estate argues that a personal liability of the person means any legal obligation, and parties to a contract become liable to perform the covenants

contained in the contract at the time the contract is executed, "notwithstanding that no right of action could accrue until a breach." (*Chambers v. Farnham* (1920) 182 Cal. 191, 195 [187 P. 732].) The estate points out that the legal obligation under the dissolution agreement arose prior to Goldstein's death. It contends that this legal obligation was personal to Goldstein and therefore the statute of limitations under section 366.2, subdivision (a) applies to Dacey's breach of contract claim.

The estate reconciles the above interpretation of the statute with the language in section 366.2, subdivision (a), which states the "cause of action survives" the decedent's death, by maintaining that the use of the words "cause of action" does not mean that a *complete* cause of action must exist at the time of the decedent's death. Under the primary right theory, a cause of action is defined as " '(1) a primary right possessed by the plaintiff, (2) a corresponding duty imposed upon the defendant, and (3) a wrong done by the defendant which is a breach of such primary right and duty.' " (*Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603, 610 [118 Cal.Rptr.3d 788].) The estate declares that the Legislature's insertion of the words "not accrued" into the statute indicates its intent not to require the third element, wrongdoing by the defendant, to have occurred by the time of the decedent's death as long as the legal obligation under the contract with the decedent survives the decedent's death.

Dacey disagrees; he asserts that there was no cause of action that survived Goldstein's death since Goldstein did not breach the dissolution agreement. Dacey contends that postdeath misconduct can be committed only by someone other than the decedent, and section 366.2, subdivision (a) never applies to claims involving postdeath misconduct. Dacey points out there is nothing in the language indicating that only some of the elements of a cause of action have to be in existence at the time of the decedent's death.

b. *The Meaning of the Words in the Statute*

◼ Generally, a statute of limitations begins upon the accrual of a cause of action, but the Legislature is free for policy reasons to adopt a different rule. (§ 312; *Hamilton v. Asbestos Corp* (2000) 22 Cal.4th 1127, 1144–1145 [95 Cal.Rptr.2d 701, 998 P.2d 403].) Section 366.2 provides that "an action may be brought on a liability of the person . . . whether accrued or not accrued" as long as the cause of action survives death. (§ 366.2, subd. (a).)

An action is defined as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (§ 22.) At oral argument, the estate argued that, at the

time of Goldstein's death, Dacey could have brought an action for declaratory relief based on Goldstein's contractual obligation to him.

■ We agree with the estate that Goldstein was liable under contract to Dacey and, at the time of Goldstein's death, Dacey possibly had a creditor's claim. We, however, do not agree that a contractual liability is the same as "liability of the person." (§ 366.2, subd. (a).) "Liability of the person, or 'personal liability' means '[l]iability for which one is personally accountable and for which a wronged party can seek satisfaction out of the wrongdoer's personal assets.' (Black's Law Dict. (8th ed. 2004) p. 993.)" (*Yool, supra*, 151 Cal.App.4th at p. 875.) At the time of Goldstein's death, there was no wronged party, and Dacey could not have filed any cause of action against Goldstein based on contract or tort.

The estate contends that the word "liability" of the decedent is used in Probate Code section 9000, subdivision (a)(1) to mean any " '[c]laim' " that is a demand for payment, "whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated . . . ." It claims that the creditors' claim statute in the Probate Code and the statute of limitations under Code of Civil Procedure section 366.2, subdivision (a) are to be considered together and therefore the definition of "liability" in Probate Code section 9000 applies to section 366.2. The word "liability" in section 366.2, according to the estate, refers solely to the underlying obligation.

The estate's argument ignores that the Legislature provided a special definition for "liability" in Probate Code section 9000, but the Legislature did not indicate that this special definition has any application to statutes outside the Probate Code. Probate Code section 9000 is concerned with claims by creditors, and a creditor is any "person who *may* have a claim against estate property." (Prob. Code, § 9000, subd. (c), italics added.) Under a claims statute, such as Probate Code section 9100, the party has an obligation to file a claim if there is any liability or legal obligation. Section 366.2, a statute of limitations under the Code of Civil Procedure, is not concerned with possible claims against estate property. Rather, this statute, when considered within the context of contracts, applies to claims against the estate on all *causes of action* on a decedent's debts when the causes of action survive the decedent's death. Thus, under the statute of limitations, a party has an obligation to file an action when the party fails to perform as promised.

The estate focuses on the language in section 366.2, subdivision (a), which states that the cause of action against the decedent does not have to have accrued by the time of the decedent's death. This language, according to the estate, shows that the Legislature intended section 366.2, subdivision (a) to apply when a cause of action is incomplete at the time of the decedent's

death, such as when the wrongdoing or failure to perform occurs after the decedent's death. The estate emphasizes that the present case, which involves a contract, differs from other cases that have held that the misconduct must be committed by the decedent because in those cases there was no contractual obligation or liability personal to the decedent before the decedent's death. (See, e.g., *Shewry v. Begil* (2005) 128 Cal.App.4th 639, 644 [27 Cal.Rptr.3d 209] [the Medi-Cal reimbursement claim existed "only by right of statute, and only against the deceased person's estate" and therefore statutory liability arose "only upon the decedent's death" and "could not have been brought against the decedent"].)

■ We are not persuaded by the estate's argument. If the Legislature did not intend to require the entire cause of action to survive the decedent's death, it would have stated that the claim or liability, not the cause of action, had to survive the decedent's death.[14] "A cause of action for breach of contract does not accrue before the time of breach." (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 488 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; see *Kroff v. Larson* (1985) 167 Cal.App.3d 857, 860–861 [213 Cal.Rptr. 526].)

■ We conclude that the correct construction of the words "accrued" and "not accrued," which gives effect to each word in the statute without severely limiting the meaning of "cause of action," is the interpretation set forth in *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509 [75 Cal.Rptr.3d 19]. The *Ferraro* court determined that section 366.2, subdivision (a) did not apply to the claim of a breach of an agreement to make a specific testamentary disposition. The court concluded that the claim "could not come into existence until decedent died having failed to make provision in accordance with her alleged agreement . . . ." (*Ferraro*, at p. 554.) When explaining the meaning of "not accrued" in section 366.2, subdivision (a), and attempting to harmonize it with the latter part of the statute requiring the cause of action to survive the death of the decedent, the court concluded that "not accrued" referred to claims fully accrued, but not accrued until after the decedent's death under the delayed discovery rule. (*Ferraro*, at p. 554.) Under *Ferraro*'s reasoning, the breach or misconduct must occur prior to the decedent's death, but the claim does not have to be discovered while the decedent is alive. (See also *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398 [87 Cal.Rptr.2d 453, 981 P.2d 79] [discusses accrual under the discovery rule].)

---

[14] As we discuss subsequently, some cases involving torts committed by the decedent hold that the element of damages does not have to be suffered prior to the decedent's death. (See, e.g., *Bradley v. Breen, supra*, 73 Cal.App.4th 798.) We express no opinion as to whether damages have to occur prior to the decedent's death for section 366.2, subdivision (a) to apply, since that issue is not before us.

Although some courts have applied section 366.2, subdivision (a) to situations where the damages were not ascertainable or suffered until after the decedent's death (see, e.g., *Bradley v. Breen, supra,* 73 Cal.App.4th 798; *Dawes v. Rich* (1997) 60 Cal.App.4th 24, 32–36 [70 Cal.Rptr.2d 72]; *Yool, supra,* 151 Cal.App.4th at p. 876–877;[15] *Battuello v. Battuello, supra,* 64 Cal.App.4th 842[16]), we are not aware of any case that has applied the statute when the decedent did not commit the injury or did not already have a collectible debt at the time of death. Thus, for example, in *Bradley,* the

---

[15] The court in *Yool, supra,* 151 Cal.App.4th 867 provided two independent reasons for concluding that section 366.2, subdivision (a) does not apply. In *Yool,* a mother and a daughter took title to a house and, after the mother died, the daughter claimed that the mother "had provided no consideration for the property, never intended to take beneficial title, and accepted legal title as a mere accommodation to facilitate financing." (*Yool,* at p. 871.) The daughter asserted a resulting trust in her favor, and the appellate court held that section 366.2, subdivision (a) did not bar the claim. (*Yool,* at p. 875.) The court explained that the allegations did not state a cause of action " 'on a liability of the person' " as required by section 366.2, subdivision (a), because "the trustee holds title, *but does not own* the property in question [and, therefore,] there is no issue of personal liability or resort to the trustee's assets." (*Yool,* at p. 875.) The court held that the statute of limitations begins to run when the trustee repudiates the trust, and repudiation occurs when the beneficiary demands the property from the trustee and the trustee refuses to convey the property or account for it. (*Id.* at pp. 875–876.) The court explained that by definition, an action for a resulting trust seeks only to convey legal title to property that the claimant (not the decedent) already beneficially owns. (*Ibid.*)

The court in *Yool* also determined that an independent reason for rejecting the application of section 366.2, subdivision (a) was that this statute "specifically contemplates an action that may be brought against a person prior to his or her death. Under the facts of this case there was no cause of action, accrued or not yet accrued, that existed at the time of decedent's death within the sense of section 366.2 and hence no action that could have been commenced on that cause." (*Yool, supra,* 151 Cal.App.4th at pp. 876–877.) The court stressed that the mother had not repudiated the resulting trust or shown any resistance to conveying the property prior to her death. (*Id.* at p. 877.) The court observed that the facts established that the mother would have conveyed title to the daughter had the daughter asked her to do so. (*Ibid.*) The court explained that the proper interpretation of "not accrued" in section 366.2 was that the misconduct must have occurred prior to the decedent's death, but the damages do not have to occur until after the decedent's death. (*Yool,* at p. 877.) The court concluded, "Simply put, the cause of action had not accrued, nor did it exist." (*Ibid.*)

[16] The court in *Battuello v. Battuello, supra,* 64 Cal.App.4th 842 declared that section 366.2 generally would not apply to a cause of action alleging a promise to leave certain property in a will because such a cause of action "neither 'accrue[s]' prior to the promisor's death nor 'survives' his death." (*Battuello,* at p. 846.) The court concluded an exception to this general rule occurred in the case before it because the promisor had during his lifetime made a transfer of the promised property to another and therefore the cause of action did exist prior to the decedent's death. (*Ibid.*) The court then appeared to contradict its statement that the damage had to occur prior to the decedent's death when it stated in a footnote that the statute of limitations applied even if a transaction prior to death "could only potentially harm" the plaintiff, because section 366.2 "governs causes of action that exist at the time of a person's death 'whether accrued or not accrued.' " (*Battuello, supra,* at p. 847, fn. 1.) Although the court was not clear whether the damage had to occur prior to the decedent's death for section 366.2 to apply, it did plainly hold that the misconduct or breach had to be committed by the decedent before his or her death.

decedent pled guilty to a criminal charge of lewd acts with a minor and the minor sued him in civil court. (*Bradley, supra,* at p. 800.) After the decedent died, the minor sued the defendants, alleging that they aided and abetted the molestation. (*Ibid.*) The defendants cross-complained against the estate for indemnity and other relief. (*Ibid.*) The appellate court rejected the argument that it was inequitable to apply section 366.2 to a cross-action for equitable indemnity simply because the defendants seeking indemnity from the estate had not paid a judgment or settlement within one year of the decedent's death and could not have filed their claims any sooner. (*Bradley, supra,* at p. 805.) In *Bradley,* the decedent committed the molestation; thus, the defendants' cause of action against the estate—unlike the present case—was based on the decedent's wrongful conduct.

The estate cites *Wagner v. Wagner, supra,* 162 Cal.App.4th 249 when urging a construction of section 366.2, subdivision (a) that does not require the decedent to have committed the actual injury. In *Wagner,* the trustee of her deceased mother's living trust requested an order permitting her to pay herself out of trust funds for past care of her mother more than one year after her mother died, and her brother objected on the basis that the request was untimely. (162 Cal.App.4th at p. 252.) The court held that section 366.2, subdivision (a) barred the claim by the daughter trustee against the decedent's living trust for compensation. (*Wagner,* at p. 256.) *Wagner's* rendition of the facts did not indicate that the mother had engaged in any misconduct prior to her death, and apparently this was not an issue raised on appeal. In rejecting the trustee daughter's argument that she satisfied the statute because she had formed the claim against the trust in her own mind and knew about it as the trustee within the statutory period, the court announced, " 'This uniform one-year statute of limitations applies to actions on all claims against the decedent which survive the decedent's death.' " (*Ibid.*)

Wagner v. Wagner, supra, 162 Cal.App.4th 249 did not address the question posed here, which is whether the decedent has to commit the breach of contract for section 366.2, subdivision (a) to apply. It is axiomatic that opinions are not authority for issues not considered. (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1268 [48 Cal.Rptr.2d 12, 906 P.2d 1112].) Furthermore, *Wagner* differs significantly from the present case because the mother in *Wagner* actually owed the daughter a debt at the time of her death and therefore, at the time of the mother's death, the daughter did have a cause of action on her mother's debt.

In contrast to the situation in *Wagner v. Wagner, supra,* 162 Cal.App.4th 249, Dacey did not have a cause of action on a debt when Goldstein died, because Goldstein's obligation to Dacey was contingent upon the flood cases resulting in a settlement or a victory for the plaintiffs. Neither event had

occurred at the time of Goldstein's death. At the time of Goldstein's death, Dacey had a claim of a potential debt based on the dissolution agreement. Since Dacey had no cause of action against Goldstein at the time of his death, section 366.2, subdivision (a) does not apply.[17]

■ Our interpretation of section 366.2 does not violate the public policy of protecting the decedent's estate from creditors' stale claims. When a party has a claim based on a contract with the decedent—no matter whether the obligation has come due or the breach has occurred—Probate Code section 9000 et seq. will operate to ensure that stale creditors' claims will not be presented years later. When the decedent actually owes money at the time of his or her death and does not pay it or acts in some manner to repudiate a contractual obligation, section 366.2, subdivision (a) will apply. We do not believe that the Legislature intended section 366.2 to apply to mere claims, but intended the statute to apply " '*in any action on a debt of the decedent . . . .*' " (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 308 [99 Cal.Rptr.2d 792, 6 P.3d 713], citing Recommendation relating to Notice to Creditors in Estate Administration (Dec. 1989) Cal. Law Revision Com. Rep. (1990) p. 515.)

At the time of his death, Goldstein had a liability, but did not actually owe Dacey any money. It would be unfair to bar Dacey's claim for breach of contract when he never had any cause of action for debt against Goldstein and never had a cause of action against Goldstein for breach of contract. As the estate argues, both section 366.2 and Probate Code section 9000 et seq. are designed to accomplish the Legislature's goal of promoting the prompt administration of estates, but they do not address the same liabilities: The statute of limitations cuts off the time for asserting a claim against the decedent's estate based on a *cause of action* that existed against the decedent before the decedent's death. The Probate Code provides a method for the timely handling of a creditor's claim based on a liability or legal obligation of the decedent.

■ Accordingly, we hold that section 366.2 does not apply in the present case where the debt was not enforceable against Goldstein while he was alive and the breach of the contract occurred after Goldstein's death.[18]

---

[17] We need not consider the application of section 366.2, subdivision (a) where the debt is enforceable against the decedent before his or her death, but a different party commits the actual breach or refuses to pay the debt. In the present case, Dacey had no cause of action for an unpaid debt at the time of Goldstein's death *and* Goldstein did not breach or repudiate his contract with Dacey.

[18] We need not address the arguments regarding the application of section 366.2 based on Dacey's assertion that he was not pursuing a contract claim but seeking to recover specific property from Goldstein's estate. As already discussed, we agree with the trial court's ruling

## C. *Awarding Prejudgment Interest*

Taraday contends that, even if we affirm the lower court's ruling that Dacey is entitled to breach of contract damages, we should reverse its award of prejudgment interest to Dacey. He maintains that interest does not accrue from the time of breach, as the lower court ruled, but begins to accrue once the probate court orders him to pay the estate's debt to Dacey. Since the probate court has refused to order payment to Dacey while this appeal is pending, Taraday argues that Dacey is not entitled to any interest.

In the present case, it is undisputed that the dissolution agreement did not mention that any interest would accrue if any party breached the contract. Since the dissolution agreement is silent regarding interest, Taraday argues that the rules prescribed by the Probate Code control. He argues that, under the Probate Code, he had had no obligation to pay Dacey any debt until ordered to pay by the probate court (see Prob. Code, § 11422, subd. (a)), and that interest accrues from the date the probate court orders payment of the debt (Prob. Code, § 11423, subd. (a)).

Both Dacey and Taraday agree that Probate Code section 11423 sets forth the rules regarding the application of interest in the present case, but they disagree as to the interpretation of this statute. Dacey maintains that, under this statute, interest accrues from the time of the breach of contract; Taraday argues that interest accrues from the time the probate court orders payment of the debt.

Probate Code section 11423 provides as follows: "(a) Interest accrues on a debt from the date the court orders payment of the debt until the date the debt is paid. Interest accrues at the legal rate on judgments. [¶] (b) Notwithstanding subdivision (a), in the case of a debt based on a written contract, interest accrues at the rate and in accordance with the terms of the contract. The personal representative may, by order of the court, pay all or part of the interest accumulated and unpaid at any time when there are sufficient funds, whether the debt is then due or not. [¶] (c) Notwithstanding subdivision (a), in the case of a debt for unpaid taxes or any other debt for which interest is expressly provided by statute, interest accrues at the rate and in accordance with the terms of the statute."

---

that the flood cases did not belong to the partnership and therefore Dacey had no property interest in these cases; the flood cases had been legally assigned to Goldstein. We also do not need to consider the estate's arguments that, even if Dacey prevailed on his claim that he was seeking to recover specific property, section 366.2 applies. As already stressed, we reject Dacey's argument that he had a right to recover specific property and, given that holding, the sole issue remaining for our consideration was the application of section 366.2 to his breach of contract claim.

■ Here, the judgment was based on a contract. Under this statute, when a debt is based on a written contract, subdivision (a) of Probate Code section 11423 does not apply and "interest accrues at the rate and in accordance with the terms of the contract." (Prob. Code, § 11423, subd. (b).) The dissolution agreement did not include an interest clause, but Civil Code section 3289, subdivision (b) states, "[i]f a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." The parties entered into the dissolution agreement after 1986. Thus, Civil Code section 3289, subdivision (b) applies and the lower court correctly ordered prejudgment interest at the rate of 10 percent.

Taraday urges us to construe Probate Code section 11423 to mean that subdivision (b) modifies the rate of interest set forth in the second sentence of subdivision (a), but does not alter the date interest begins to accrue as stated in subdivision (a). He claims that the language, "[n]otwithstanding subdivision (a)," in subdivision (b), has no effect on the first sentence in subdivision (a).

■ Subdivision (b) of Probate Code section 11423 states, "[n]otwithstanding subdivision (a)." This provision does not state "notwithstanding the second sentence in subdivision (a)" or "notwithstanding the interest rate set forth in subdivision (a)." Taraday provides no authority for rewriting the statute, and we reject his interpretation. "[I]n construing this, or any statute, we may not broaden or narrow the scope of the provision by reading into it language that does not appear in it or reading out of it language that does." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545 [67 Cal.Rptr.3d 330, 169 P.3d 559].)

Furthermore, in those instances where a contract term specifies that a particular interest rate begins to accrue at the time of breach, there would be an inconsistency between subdivision (b) and subdivision (a) in Probate Code section 11423 under the construction urged by Taraday. Thus, Taraday's interpretation violates the rule that we follow the statute's plain meaning and we must "harmonize" the various parts of the statute. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)

■ We will not rewrite the statute in the manner urged by Taraday. "Courts should use this power to rewrite statutes 'with great restraint,' only where 'the error is clear and correction will best carry out the intent of the Legislature.' [Citation.]" (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 905 [80 Cal.Rptr.3d 690, 188 P.3d 629].) Under the plain meaning of Probate Code section 11423, subdivision (b), the lower court correctly ordered interest at the rate of 10 percent from the time that the breach of the dissolution agreement occurred.

## DISPOSITION

The judgment is affirmed. Dacey is to pay the costs of his appeal and the estate is to pay the costs of its cross-appeal.

Kline, P. J., and Richman, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 31, 2011, S195217.