Filed 2/8/16  Estate of Maddi CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| Estate of Rose Maddi, Deceased. | D067048 |
| PETER BEVERIDGE, as Administrator, etc., | |
| Petitioner and Respondent, | (Super. Ct. No. 37-2012-00150152-PR-PL-NC) |
| v. | |
| RICHARD RICE, as Trustee, etc., | |
| Claimant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Julia Craig Kelety, Judge.  Order and judgment affirmed.  Request for judicial notice granted.

Hoppes Law Offices and Carl J. Hoppes for Claimant and Appellant.

Law Offices of Kenneth Miller & Michael Miller, Michael I. Miller; Law Offices of Gregory Y. Lievers, Gregory Y. Lievers and Lorin R. Clark for Petitioner and Respondent.

Bess West, who was 97 years old, died in December 2011. Five days later, her twin sister, Rose Maddi, died. While the two sisters were living together in the months before their deaths, Rose, who was trustee of Bess's trust, had taken money that allegedly belonged to Bess's trust, and deposited it into joint bank accounts owned by Bess and Rose.[1] Because Rose survived Bess by a few days, litigation ensued over whether those funds belong to Bess's trust, in which case the money would be distributed to Donald Rice—or instead if those funds belong to Rose's estate, which excludes Donald.

Code of Civil Procedure,[2] section 366.2 provides that if a person against whom an action may be brought on a liability of the person dies before the expiration of the application limitations period, and the cause of action survives, an action must be commenced within one year after the date of death. Rose died in December 2011, but Richard Rice, as trustee of Bess's trust, did not commence an action against Rose's estate until April 2014. The probate court dismissed Richard's action as time-barred under section 366.2.

Richard appeals. He asserts section 366.2 does not apply because, in his view, no claims could have been asserted against Rose before she died. Richard also contends applying section 366.2 here is "inequitable on its face" because Rose's will was not

---

[1]    We refer to family members by first names for clarity.

[2]    All statutory references are to the Code of Civil Procedure unless otherwise specified. When referring to statutory subparts in this code, the word "subdivision" is omitted.

admitted to probate until August 2013, which is after the limitations period under section 366.2 had already expired.

We affirm. Contrary to Richard's assertions, section 366.2 applies because Donald could have asserted claims against Rose before she died. (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1076 (*Giraldin*).) Moreover, the strong public policy of expeditious estate administration in section 366.2 requires its limitations period to be applied even in unusual cases where the one-year period lapses before estate administration begins. (*Bradley v. Breen* (1999) 73 Cal.App.4th 798, 805-806 (*Bradley*) [section 366.2 applies even when "impossible" to assert claims against the estate within the one-year period]; *Levine v. Levine* (2002) 102 Cal.App.4th 1256, 1265 (*Levine*) [section 366.2 applies even where no proceeding to administer estate was initiated and there was no notice to creditors]; *Dawes v. Rich* (1997) 60 Cal.App.4th 24, 36 (*Dawes*) ["the Legislature plainly recognized the risk that in unusual circumstances creditors would not be able to bring an action within one year of death"].) As this court noted in *Dawes*, any unfairness is ameliorated because, in general, a creditor may file a petition to probate a debtor's estate and a creditor's claim against the estate, which tolls section 366.2. (*Dawes,* p. 36, fn. 6.)

FACTUAL AND PROCEDURAL BACKGROUND

A. *Introduction*

The record in this case is sparse, consisting of a (1) five-page verified petition to establish ownership of estate property; (2) nine-page verified response, including points and authorities; (3) five-page points and authorities in support of the petition; and (4) two-page order.

3

The court held a hearing and counsel argued, but Richard did not designate a reporter's transcript on appeal. The record contains no declarations, exhibits, or other evidence. It appears the parties and the court decided to litigate the statute of limitations issue by itself, on what are essentially undisputed core operative facts. The recitation of facts below is necessarily limited by this record and to this proceeding.

B. *Bess's Estate Plan*

Bess and Rose were twin sisters. In 2005 Bess, as settlor, established the Restated West Family Trust (West Trust) and transferred title to her home into the trust. Apparently because of Bess's failing health, in 2011 Rose was the West Trust's successor trustee.

Bess's will left all her estate to the West Trust. The West Trust provides that upon Bess's death, the trustee was to distribute the assets to Rose, but if Rose was deceased, then equally to Donald Rice and Karel Kaskala.

The West Trust also contains a survivorship provision, stating, "[I]f any person named herein fails to survive the Trustor for thirty days, for all purposes of this trust, the person shall be considered to have predeceased the Trustor."

C. *West Trust Assets into Joint Accounts*

As Bess's health declined in 2011, she moved into Rose's house. In February 2011, as trustee of the West Trust, Rose sold Bess's home. Rose deposited the sale proceeds ($254,000) as well as other of Bess's assets into bank accounts she and Bess owned jointly.

4

Rose's estate contends the sisters were very close, and the joint tenancy accounts mirrored, and were consistent with, the sisters' estate planning intentions to provide for the survivor of them. In contrast, Richard contends that Rose, in her position as Bess's caretaker, thought she had authority to combine sale proceeds, cash, and accounts "as she saw fit." Richard asserts Bess did not know of, or consent to Rose's actions "as relates to the proceeds of her house sale."

D. *Bess and Rose Die*

At the age of 97, Bess died on December 26, 2011. Rose died five days later on December 31, 2011.

E. *Rose's Probate*

After what the attorneys for Rose's estate describe as "a lengthy legal dispute," in August 2013 a copy of Rose's lost will was admitted to probate. The probate court issued an order appointing Peter Beveridge as administrator of Rose's estate with will annexed.[3]

Donald appealed from the order admitting the copy of the lost will to probate; however, on July 17, 2014, this court dismissed his appeal after Donald failed to file an opening brief. (*Beveridge v. Rice*, D064864.)

F. *Donald Files Objections to Inventory and Appraisal*

In January 2014 Donald filed objections to the inventory and appraisal that had been filed in Rose's estate. Donald asserted he was the "sole living beneficiary of the

---

[3]    We previously granted Beveridge's unopposed request for judicial notice of this order.

5

estate of Bess West" and "a majority of the bank balances" in Rose's estate "were from the estate of Bess West."  The probate court denied Donald's objections "without prejudice" to his bringing a petition under Probate Code section 850.

G.  *Richard Files Probate Code Section 850 Petition*

"[Probate Code section] 850 governs probate litigation over adverse claims to property."  (Ross & Cohen, Cal. Practice Guide:  Probate (The Rutter Group 2015) ¶ 15:556, p. 15–148, italics omitted.)  In a decedent's estate administration, Probate Code section 850 proceedings may be commenced where "the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another."  (Prob. Code, § 850, subd. (a)(2)(C).)

On April 17, 2014—more than two years after Rose died—Richard, as trustee of the West Trust, filed a petition in Rose's estate under Probate Code section 850.  Richard alleged he was appointed successor trustee and that under the terms of the West Trust, "The Trustee shall distribute the trust estate to Rose Maddi, provided however, if she is deceased then said distribution shall be equally between Donald Rice and Karel Kaskala."  The petition alleges there was a "Survivorship Provision" stating, "Except as otherwise specifically provided in this instrument, if any person named herein fails to survive the Trustor for thirty days, for all purposes of this trust, the person shall be considered to have predeceased the Trustor."  Richard alleged that Bess's will is a "'Pour Over' will" that "leaves the entirety of the estate . . . to the Trust."

Richard alleged that as Bess's health declined, she moved in with Rose, who was then trustee of the West Trust.  As trustee, Rose sold Bess's home for $254,000.

6

The petition alleged that when Bess died, proceeds of the sale of her home had "still not been placed in the trust" but instead were deposited into "an account owned jointly between" Rose and Bess. Richard alleged that "[i]n the same manner, [Rose] mistakenly placed other bank accounts owned by [Bess] into accounts owned jointly, effectively removing them from the estate of [Bess]." He alleged, "It is the position of petitioners that as sole beneficiary of the trust, and in her position as caretaker of [Bess], that [Rose] thought that she had the authority to combine sale proceeds, cash and accounts as she saw fit." Richard asked the probate court to determine that as trustee of the West Trust, he is owner of the funds that Rose should have deposited in the West Trust, but instead deposited in joint accounts with Bess.

H. *Opposition*

Beveridge, as administrator of Rose's estate, opposed Richard's petition. Beveridge asserted that Richard's claims were based on Rose's alleged liability and as such must have been asserted within one year of Rose's death as provided in section 366.2. Because the undisputed evidence established Richard's claims were not presented within that one-year period, Beveridge asserted the petition should be denied as being time-barred.

I. *Reply*

In reply, Richard asserted section 366.2 did not apply because Bess never suffered any damages during her life, since she had equal access to the joint accounts. Richard argued section 366.2 did not apply because during Bess's life, she had no cause of action against Rose. Richard also argued that "[b]y the plain language of the statute," section

7

366.2 only applied to claims Rose (or her estate) might make against Bess's estate, and not any claims by Bess's estate against Rose's estate.

J. *Ruling*

After conducting a hearing in July 2014, the probate court dismissed Richard's petition with prejudice, determining it was time-barred under section 366.2.[4] On October 8, 2014, the probate court filed a written order to the same effect, dismissing Richard's Probate Code section 850 petition with prejudice, after making these findings:

> "1. Rose M. Maddi passed away on December 31, 2011.
> Petitioner's claim was filed on April 17, 2014, more than one year
> after the death of Rose M. Maddi.
>
> "2. Petitioner's claims are an action against Rose M. Maddi, an
> individual, and are thus subject to the statute of limitations set forth
> in . . . section 366.2."

K. *Judgment Settling First and Final Account*

On October 16, 2014, the probate court issued a judgment settling first and final account and report of administrator with will annexed and petition for distribution.[5] Among other provisions, the judgment provides for distribution of $663,679.98 in Rose's estate to persons other than Donald.

---

[4] We previously granted Beveridge's unopposed request to take judicial notice of this order.

[5] We grant Beveridge's unopposed request for judicial notice of the judgment. (Evid. Code, §§ 459, 452, subd. (d).)

L. *Appeal*

On October 31, 2014, Richard, as trustee of the West Trust, filed a notice of appeal from the July 3, 2014 order dismissing his Probate Code section 850 petition. Richard's notice of appeal states this order was "entered on or about October 8, 2014." Richard's notice of appeal also states he appeals from "any final orders made thereafter on October 16, 2014, entered in reliance on the October 8 order." We construe this as a reference to, and appeal from, the judgment entered October 16, 2014, limited of course by the issues Richard raises in his opening brief.

DISCUSSION

I. *THE STANDARD OF REVIEW*

Determining whether the probate court correctly applied section 366.2 involves applying this statute to core undisputed facts, namely, (1) the date Bess and Rose each died, (2) the date Richard filed his petition under Probate Code section 850, and (3) terms of the West Trust. Although the parties dispute other facts and inferences, because the appeal involves application of section 366.2 to these core undisputed facts, the standard of review is de novo. (*Dacey v. Taraday* (2011) 196 Cal.App.4th 962, 979 (*Dacey*).)

II. *RICHARD'S PETITION IS TIME-BARRED BY SECTION 366.2*

A. *Section 366.2*

"Section 366.2 is 'a general statute of limitations for all claims against a decedent.'" (*Dacey, supra,* 196 Cal.App.4th at p. 980.) Section 366.2 applies in a proceeding under Probate Code section 850 that is based "on the liability of a person who

9

dies before the expiration of the applicable limitations period." (2 Cal. Trust and Probate Litigation (Cont.Ed.Bar 2015) Resolving Disputed Property Claims, § 19.5, p. 19-7.)

Section 366.2(a) limits a creditor's time for filing an action to one year after the date of death:

> "(a) If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."

Section 366.2(b) provides that the limitations period specified in subdivision (a) "shall not be tolled or extended for any reason except as provided in" certain specifically enumerated situations. Richard does not contend that any of the specifically enumerated tolling provisions in section 366.2(b) apply. Therefore, because Richard filed his Probate Code section 850 petition more than one year after Rose's death, his claims are time-barred if section 366.2(a) applies.

By its own terms, section 366.2(a) only applies to a "liability of the person." This means "'"[l]iability for which one is personally accountable and for which a wronged party can seek satisfaction out of the wrongdoer's personal assets."'" (*Dacey, supra,* 196 Cal.App.4th at p. 982.) Section 366.2(a) applies to such liabilities "whether accrued or not accrued." This means that the breach or misconduct "must occur prior to the decedent's death, but the claim does not have to be discovered while the decedent is alive." (*Dacey*, at p. 983.)

10

In sum, "[w]hen the decedent actually owes money at the time of his or her death and does not pay it . . . section 366.2[(a)] will apply." (*Dacey, supra,* 196 Cal.App. 4th at p. 986.) "'"This uniform one-year statute of limitations applies to actions on all claims against the decedent which survive the decedent's death."'" (*Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 294 (*Stoltenberg*).) Section 366.2 applies "'to all debts of the decedent regardless of whom the claims are brought against.'" (*Stoltenberg*, at p. 295, italics omitted.)

"'"The overall intent of the Legislature in enacting [section 366.2] was to protect decedents' estates from creditors' stale claims."'" (*Stoltenberg*, *supra,* 179 Cal.App.4th at p. 292.) The Legislature believed the limitation period serves "'"'"the strong public policies of expeditious estate administration and security of title for distributees, and is consistent with the concept that a creditor has some obligation to keep informed of the status of the debtor."'"'" (*Ibid.*)

B.  *Richard's Petition Is Time-Barred*

Here, the gist of Richard's claim is that before her death, individually and/or as successor trustee of the West Trust, Rose took money belonging to the West Trust and deposited it in bank accounts jointly owned by Bess and herself. Upon Bess's death, those assets, which were outside Bess's trust, passed to Rose. Richard's petition alleges such funds belong to the West Trust and not Rose's estate.

Once Bess died, the beneficiaries of the West Trust, which include Donald, had standing to claim a violation of Rose's duties as trustee to Bess, to the extent that violation harmed the beneficiaries' interests. (*Giraldin*, *supra,* 55 Cal.4th at pp. 1071,

11

1076.)  Therefore, in the five days that Rose survived Bess, an action for breach of fiduciary duty, conversion, or for some other legal theory arising out of the acts alleged by Richard could have been maintained against Rose, either individually, or as trustee of the West Trust, or both.  (See *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 284 [collecting cases permitting an action for conversion of money that has been misappropriated, commingled, or misapplied from specific funds held for the benefit of others].)  Rose's personal assets might have been reached for such liability.[6]

Therefore, the one-year limitations period in section 366.2(a) applies to Richard's petition under Probate Code section 850 because when Rose died, she was "a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued," and she died "before the expiration of the applicable limitations period."  (§ 366.2(a).)  Richard's petition, filed more than two years after Rose's death, was untimely.

C.  *Richard's Contention That No Cause of Action Could Have Been Asserted Against Rose During Her Life Is Incorrect*

Section 366.2 does not apply where the plaintiff had no cause of action against the decedent during the decedent's life.  (See, e.g., *Dacey, supra,* 196 Cal.App.4th at p. 986 [holding that section 366.2 did not apply where breach of contract occurred after decedent's death, "[s]ince [plaintiff] had no cause of action against [decedent] at the time of his death]; *In re Estate of Yool* (2007) 151 Cal.App.4th 867, 876-877 [in an action to

---

6    We express no opinion on whether any such action would be meritorious, as that issue is not before us.

12

impose a resulting trust, section 366.2 did not apply because no cause of action existed at the time of the decedent's death].)

Invoking this rule, Richard contends section 366.2(a) does not apply here because "no action could be brought against Rose" during the five days Rose was alive after Bess died. (Italics omitted.) Richard asserts it would have had to be known, in advance, that Rose was not going to survive Bess by 30 days for any "theoretical cause of action against Rose to stand."

Richard's argument is incorrect because it ignores Donald's interest and rights as a contingent beneficiary of the West Trust. Under Probate Code section 24, subdivision (c), "beneficiary," as it relates to a trust, "means a person who has any present or future interest, vested or contingent." Richard's petition alleges Donald was a contingent beneficiary of the West Trust, who would acquire Bess's property, contingent on Rose's failure to survive Bess for 30 days. The statutory definition of "beneficiary" quoted *ante* explicitly includes contingent beneficiaries such as Donald.

After Bess died, the beneficiaries of her trust acquired standing to challenge Rose's breach of any duties as trustee that she owed to Bess, to the extent that breach harmed the beneficiaries' interests. (*Giraldin*, *supra*, 55 Cal.4th at p. 1076.) According to Richard's petition, if Rose did not survive the 30 days, Donald would take half of Bess's estate. Therefore, even while Rose was alive for those five days, Donald had an interest, as a contingent beneficiary of the West Trust, that trust assets remain in the West Trust and not in a bank account owned and controlled by Rose.

13

Donald's argument is that *until* Rose died in the 30 days after Bess's death, he had no rights or interest as a contingent beneficiary of the West Trust. But both as a legal and practical matter, this assertion is incorrect. In *Estate of Cross* (1912) 163 Cal. 778, the Supreme Court characterized a similar contingent interest in a will that required 30-day survivorship as one where "title vested" in the contingent beneficiaries (here, that would include Donald) "subject to divestiture" if the survivorship condition was satisfied. (*Id.* at p. 781.)

On a practical level, unless and until Rose survived the full 30 days (not an insignificant contingency given her age (97) and very recent death of her twin sister), Donald was at risk of losing West Trust money that Rose had already deposited into the joint accounts she established with Bess, in (alleged) violation of her duties as trustee of the West trust. Richard cites no case holding that either Donald, as contingent beneficiary, or someone else, as successor trustee of the West Trust, was required to sit on their hands and do nothing while they waited to see if Rose, with hundreds of thousands of dollars of money they claimed rights to, would satisfy the 30-day survivorship contingency on *her* rights to those funds.

To the contrary, as the court in *Giraldin* explains, upon Bess's death—and therefore while Rose was still alive—Donald had standing to protect his contingent beneficial interest by pursuing claims against Rose:

> "'After the settlor's death, of course, the trustee is accountable to the trust's other beneficiaries for its administration of the trust after the settlor's death. Further, *many courts have allowed other beneficiaries to pursue breach of duty claims after the settlor's death, related to the administration of the trust during the settlor's*

14

*lifetime, when, for example, there are allegations that the trustee breached its duty during the settlor's lifetime* and that the settlor had lost capacity . . . or did not approve or ratify the trustee's conduct.'" (*Giraldin, supra,* 55 Cal.4th at p. 1073.)

D. *There Is No Unfairness Exception to Section 366.2*

Under section 366.2(a), Richard was required to assert these claims against Rose's estate within one year of her death, which would have been December 31, 2012. However, Rose's lost will was not admitted to probate until August 26, 2013. Thus, even if Richard had filed his petition on the first day Rose's will was admitted to probate, it would have already been time-barred. Without citing any authority, but characterizing this result as "[i]nequitable on its face," Richard contends section 366.2(a) should not apply under such circumstances.

We reject Richard's argument because an unbroken line of authority has rejected similar arguments, even where it has been impossible to commence an action against the decedent's estate within the one-year limitations period in section 366.2(a). For example, in *Bradley*, *supra,* 73 Cal.App.4th 798, Walter Breen entered a guilty plea in 1990 in a case involving a charge of lewd acts with a minor. Breen died, and in July 1993 an order for probate was filed. (*Id.* at p. 800.) Almost four years later, the minor filed a personal injury action against Bradley and Waters, alleging they aided and abetted in Breen's molestation of him. Bradley and Waters cross-complained against Breen's estate for indemnity. (*Ibid.*) The trial court sustained a demurrer to the cross-complaint because it was time-barred under section 366.2. (*Bradley*, at p. 801.) On appeal in *Bradley*, the cross-complainants made essentially the same argument Richard makes here. They

15

argued it was "inequitable" to apply section 366.2(a) under these facts because it was "impossible for them to cross-complain against [Breen's] estate within the time allowed by section 366.2." (*Bradley*, *supra*, 73 Cal.App.4th at p. 805.) The court in *Bradley* rejected this argument, holding that in section 366.2, the Legislature "has determined that the one-year statute of limitations will best effectuate the strong public policy of expeditious and final estate administration, despite the possibility that in a rare case such as the present one, an action . . . may be foreclosed. This court has neither the authority nor the inclination to substitute its judgment for that of the Legislature on such policy matters." (*Bradley,* at pp. 805-806.)

In *Levine, supra,* 102 Cal.App.4th 1256, the trial court applied section 366.2 to preclude an action seeking to recoup funds the decedent allegedly took from minors' Uniform Transfers to Minors Act accounts, even where "there had been no proceeding to administer" the decedent's estate. (*Levine*, at p. 1258.) Affirming the dismissal of the claim, the Court of Appeal stated, "[N]either the language of the statute nor the policy behind it supports appellants' argument that the one-year statute of limitations should be disregarded in suits involving trust assets where there has been no proceeding to administer the estate of the decedent and no notice to creditors. The language is clear that the one-year statute applies to all debts of the decedent regardless of whom the claims are brought against." (*Id.* at p. 1265.)

This court addressed the same type of unfairness argument in *Dawes, supra,* 60 Cal.App.4th 24. In *Dawes*, we applied the 1990 version of section 353(d), which was enacted without substantive change in 1992 as section 366.2. In *Dawes*, creditors

16

attempted to reach the property of a deceased spouse (wife) to satisfy a debt that had been incurred by the surviving spouse during the marriage. The creditors' action, filed more than a year after her death, was time-barred. The plaintiffs in *Dawes* argued that applying the bar of section 353(d) was unfair because they had been engaged in protracted litigation against the surviving spouse, and they did not even prevail in their lawsuit against her until over a year following her death. Like Richard argues here, in *Dawes* the plaintiff argued it was impossible to present any claim against the estate within the one-year limitations period, and therefore it was "particularly unfair" to dismiss their claims as time-barred. (*Dawes, supra,* 60 Cal.App.4th at p. 36.) This court rejected that argument, stating the Legislature recognized the risk that "in unusual circumstances creditors would not be able to bring an action within one year of death." (*Ibid.*) The court in *Dawes* added:

> "In rejecting any longer limitation period, the drafters of the statute stated: ' . . . 'A year is usually sufficient time for all debts to come to light. Thus it is sound public policy to limit potential liability to a year; this will avoid delay and procedural complication of every probate proceeding for the rare claim that might arise more than a year after the decedent's death.' [Citation.] Given this drafting history we are in no position to relieve [plaintiffs] from operation of the statute." (*Dawes, supra,* 60 Cal.App.4th at p. 36.)

We stated in *Dawes* that any unfairness was ameliorated because generally speaking, "a creditor may file a petition to probate a debtor's estate and a creditor's claim against the estate. [Citations.] We also note that when a creditor files a claim against an estate, the limitations period set forth in former [section 353(d)] is tolled. [Citation.] We

17

express no opinion as to whether these procedures were available [in this case]." (*Dawes, supra,* 60 Cal.App.4th at p. 36, fn. 6.)  The same considerations and comment apply here.

## DISPOSITION

The order and judgment are affirmed.


NARES, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.